IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| LAKE-GEAUGA RECOVERY CENTERS, INC., *et al.*, | ) ) ) ) | CASE NO. 1:20-cv-02405 |
| | ) | JUDGE: J. PHILIP CALABRESE |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| MUNSON TOWNSHIP, *et al.*, | ) ) ) | |
| Defendants. | ) | |

_____

**PLAINTIFFS' JOINT
MOTION FOR PRELIMINARY INJUNCTION
WITH INCORPORATED MEMORANDUM IN SUPPORT**
_____

Plaintiffs Lake-Geauga Recovery Centers, Inc. ("Lake-Geauga") and Fair Housing Resource Center, Inc. ("FHRC"), pursuant to Rule 65(a) of the Federal Rules of Civil Procedure, 42 U.S.C. §3613(c)(1), 42 U.S.C. §12188(a), 42 U.S.C. §2000a-3(a), 29 U.S.C. §794a, and 42 U.S.C. §2000e-5(g)(1), move this Honorable Court for a preliminary injunction against Defendant Munson Township ("Munson Township"), Defendant Dennis Pilawa ("Pilawa"), Defendant Danielle Pitcock ("Pitcock"), Defendant Don Alexander ("Alexander"), Defendant Joe Tomaric ("Tomaric"), Defendant Jim O'Neill ("O'Neill"), and Defendant James Herringshaw ("Herringshaw") (collectively, "Defendants") enjoining Defendants from continuing to engage in the illegal conduct described more fully below and in the Complaint, and further directing Defendants to remedy the effects of their illegal, discriminatory conduct, described below and in the Complaint. Such affirmative relief should include, but not necessarily

be limited to, the elimination of any and all policies and rules prohibiting Lake-Geauga from opening and/or operating a sober living home at 12700 Ravenna Road, Munson Township, Ohio ("Twelve Meadows") or elsewhere in Munson Township and from continuing to cause the diversion of FHRC's resources and the frustration of its mission as a result of Defendants' unlawful and discriminatory conduct.

As set forth more fully in the attached Memorandum in Support, Lake-Geauga and FHRC have a strong likelihood of success on the merits of their case and would suffer irreparable injury if the requested injunction were not granted. Further, the issuance of a preliminary injunction would not cause substantial harm to others and the public interest would be served by issuance of a preliminary injunction. Therefore, Lake-Geauga and FHRC request that this Court issue an order preliminarily enjoining Defendants from continuing to engage in the illegal conduct, described more fully below and in the Complaint, and further directing Defendants to remedy the effects of their illegal, discriminatory conduct, described below and in the Complaint.

Lake-Geauga and FHRC further request that if a preliminary injunction is not issued based solely on this motion pursuant to Fed. R. Civ. P. 65(a)(1), that pursuant to Rule 65(a)(2), then, after a brief period of limited discovery, an evidentiary hearing be held at an early point in the case and consolidated with the trial on the merits of the claim for a permanent injunction as requested in the Complaint.[1]

This Motion is supported by the accompanying Memorandum in Support, which is incorporated herein by reference, and Plaintiff's Complaint for Declaratory and Injunctive Relief and for Monetary Damages.

---

[1] Plaintiffs respectfully request that their claim for damages be bifurcated since that claim is subject to a jury trial, pursuant to Fed. R. Civ. P. 65(a)(2).

Further, counsel for Lake-Geauga certifies, pursuant to Fed. R. Civ. P. 65(a)(1), that notice of the instant Motion has been provided to counsel for all Defendants in advance of filing this Motion seeking an injunction.

Respectfully submitted,

/s/ Benjamin Grant Chojnacki
R. Todd Hunt (Reg. No. 0008951)
 Email: rthunt@walterhav.com
 Direct Dial: 216-928-2935
Benjamin Grant Chojnacki (Reg. No. 0087401)
 Email: bchojnacki@walterhav.com
 Direct Dial: 216-619-7850

WALTER | HAVERFIELD LLP
1301 East Ninth Street, Suite 3500
Cleveland, Ohio 44114-1821

and

James M. Gillette (Reg. No. 0015995)
 117 South Street, Suite 208
 Chardon, OH 44024
 Email: jim@jamesgillettelaw.com
 Telephone: 440-286-7195

and

Stephen M. Dane (Reg. No. 0013057)
 DANE LAW LLC
 312 Louisiana Ave.
 Perrysburg, OH 43551
 Telephone: (419) 873-1814
 Email: sdane@fairhousinglaw.com

*Attorneys for Plaintiffs*
*Lake-Geauga Recovery, Centers, Inc. and*
*Fair Housing Resource Center, Inc.*

<u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................. iii

MEMORANDUM IN SUPPORT ........................................................................................ 1

I.      STATEMENT OF ISSUE PRESENTED ........................................................... 1

1.      Are Plaintiffs Lake-Geauga Recovery Centers, Inc. and Fair Housing Resource
Center, Inc. entitled to a preliminary injunction under Rule 65 of the Federal Rules
of Civil Procedure? ......................................................................................... 1

II.     STATEMENT OF FACTS ................................................................................. 2

   A.    Background Information ......................................................................... 2

   B.    Munson Township's Zoning Resolution ................................................ 7

   C.    Lake-Geauga's Efforts to Operate Twelve Meadows have been stymied by
Defendants' Discriminatory Actions. ................................................... 9

   D.    Despite Lake-Geauga's requests and protestations, Munson Township forces Lake-
Geauga to participate in a contentious, discriminatory, and harassing public hearing
before the BZA. ................................................................................... 14

   E.    Lake-Geauga continues to suffer irreparable loss and injury as a result of
Defendants illegal conduct. ................................................................. 18

III.    LAW AND ARGUMENT ................................................................................. 19

   A.    *Factor Test for Issuance of a Preliminary Injunction* ....................... 19

   B.    *The Factors Weigh in Favor of Issuing the Preliminary Injunction* ... 20

     1.   There is a strong likelihood that Lake-Geauga will prevail on the merits of each of its
claims. ................................................................................................. 20

       a.    Defendants have engaged in unlawful disability discrimination under the
federal Fair Housing Act. ................................................... 20

       b.    Defendants have violated 42 U.S.C. §3604(f)(3)(B) by refusing to make
reasonable accommodations in the Resolution when such accommodations are
necessary to afford a person with a disability an equal opportunity to use and
enjoy Twelve Meadows. ..................................................... 23

       c.    Defendants violated the Americans with Disabilities Act by discriminating
against persons with a disabilities. .................................... 26

d.       Defendants violated the Americans with Disabilities Act by failing to make a reasonable accommodation in its policies and practices that were necessary to avoid discrimination of persons with a disabilities .................................................. 28

e.       Defendants have violated Section 504 of the Rehabilitation Act. ......................... 29

f.       Defendants have engaged in unlawful discriminatory practices in violation of Section 4112.02(H) of the Ohio Revised Code. ..................................................... 32

2.   Absent a preliminary injunction, Plaintiffs will suffer irreparable harm. ...................... 33

3.   There will be no substantial harm to others from granting this preliminary injunction. ....................................................................................................................... 36

4.   The public interest is served by granting the preliminary injunction............................ 36

IV.   CONCLUSION ............................................................................................................... 37

# TABLE OF AUTHORITIES

**Cases**

Adams v. Ohio Dept. of Health, 356 N.E.2d 324 (Ohio Com.Pl. 1976) ..................................... 36

Adelman Real Estate Co. v. Gabanic, 109 Ohio App.3d 689 (Geauga 1996) ............................. 17

Bronk v. Ineichen, 54 F.3d 425 (7th Cir.1995).......................................................................... 24

Chapp v. Bowman, 750 F. Supp. 274 (W.D. Mich. 1990) .......................................................... 35

City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432 (1985).................................... 17

City of Columbus Civil Serv. Comm'n v. McGlone, 82 Ohio St.3d 569 (1998) ........................ 32

City of Edmonds v. Oxford House, Inc., 514 U.S. 725, 115 S.Ct. 1776,
 131 L.Ed.2d 801 (1995) ...................................................................................................... 22

Cousins v. Bray, 297 F.Supp.2d 1027 (S.D.Ohio 2003)............................................................. 33

Deck v. City of Toledo, 29 F. Supp. 2d 431 (N.D. Ohio 1998).................................................... 36

Doherty v. S. Coll. of Optometry, 862 F.2d 570 (6th Cir. 1988).................................................. 30

Fair Housing Advocates Ass'n., Inc. v. City of Richmond Hts., Ohio, 209 F3d 626
 (6th Cir. 2000).................................................................................................................... 25

Forest City Daly Housing, Inc. v. Town of North Hempstead, 175 F.3d 144
 (2d Cir. 1999)...................................................................................................................... 33

Gresham v. Windrush Partners, Ltd., 730 F.2d 1417 (11th Cir.1984)......................................... 33

Harding v. City of Toledo, 433 F.Supp.2d 867 (N.D. Ohio 2006) .............................................. 28

Howard v. City Beavercreek, 276 F.3d 802 (6th Cir. 2002)........................................ 23, 24, 25, 26

Illinois Bell Tel. Co. v. Illinois Commerce Comm'n, 740 F.2d 566 (7th Cir.1984) ..................... 34

Innovative Health Systems v. City of White Plains, 117 F.3d 37 (2d Cir. 1997)......................... 30

Johnson v. City of Saline, 151 F.3d 564 (6th Cir. 1998) .............................................................. 30

Jordan v. Greater Dayton Premier Management, 9F.Supp.3d 847 (S.D. Ohio 2014) ............ 33, 34

Kennedy v. Fitzgerald, 102 F.Supp.2d 100 (N.D.N.Y. 2000) ..................................................... 30

Kennerly v. ARO, Inc., 447 F. Supp. 1090 (E.D. Tenn. 1977) ..................................................... 34

Larkin v. Michigan Dept. of Social Services, 89 F.3d 285 (6th Cir. 1996).................................. 24

Lucas v. Forty-Fourth General Assembly of Colorado, 377 U.S. 713, 84 S.Ct. 1459,
12 L.Ed.2d 632 (1964) ........................................................................................................ 17

McPherson v. Michigan High Sch. Athletic Ass'n, 119 F.3d 453 (6th Cir.1997) ....................... 20

MX Group, Inc, v. City of Covington, 293 F.3d 326 (6th Cir. 2002)............................................ 30

Nken v. Holder, 556 U.S. 418, 129 S.Ct. 1749 (2009) ................................................................ 19

North Shore-Chicago Rehabilitation, Inc. v. Village of Skokie, 827 F. Supp. 497
(N.D. Ill. 1993).................................................................................................................... 33

Oconomowoc Residential Programs, Inc. v. City of Milwaukee, 300 F.3d 775
(7th Cir.2002)...................................................................................................................... 29

Overstreet v. Lexington-Fayette Urban Cnty. Gov't, 305 F.3d 566 (6th Cir. 2002).................... 35

Palmore v. Sidoti, 466 U.S. 429, 104 S.Ct. 1879, 80 L.Ed.2d 421 (1984) .................................. 17

Planned Parenthood Affiliates of Ohio v. Rhodes, 477 F. Supp. 529 (S.D. Ohio 1979).............. 36

Popovich v. Cuyahoga County Court of Common Pleas, Domestic Relations Div.,
150 Fed. Appx. 424 (6th Cir. 2005) .................................................................................... 30

Rogers v. Windmill Pointe Village Club Ass'n, 967 F.2d 525 (11th Cir.1992) .......................... 33

Sandison v. Michigan High Sch. Athletic Ass'n, 64 F.3d 1026 (6th Cir.1995)........................... 20

Smith v. Lee Associates v. City of Taylor, 19 F.3d 920 (6th Cir. 1993)....................................... 24

Southeastern Community College v. Davis, 442 U.S. 397, 410, 99 S.Ct. 2361,
60 L.Ed.2d 980 (1979) ........................................................................................................ 24

Stewart B. McKinney Found., Inc. v. Town Plan & Zoning Comm'n of Town of Fairfield,
790 F. Supp. 1197 (D. Conn. 1992)..................................................................................... 34

Thomas By and Through Thomas v. Davidson Academy, 846 F.Supp. 611
(M.D. Tenn.1994) ................................................................................................................ 36

United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Reg'l
Transit Auth., 163 F.3d 341 (6th Cir.1998) ........................................................................ 20

United States v. Edward Rose & Sons, et al ................................................................ 34

Vance v. City of Maumee, Ohio, 960 F.Supp.2d 720 (N.D. Ohio 2013) ....................... 28

Washington v. Reno, 35 F.3d 1093 (6th Cir. 1994) .................................................. 34, 35

Waters v. Wisconsin Steel Works of International Harvester Co., 502 F.2d 1309
    (7th Cir. 1974) ......................................................................................................... 34

## Statutes

24 C.F.R. § 8.3 ............................................................................................................... 29

24 C.F.R. § 8.4(a) ..................................................................................................... 29, 31

24 C.F.R. § 8.4(b)(1)(ii) ................................................................................................. 31

24 C.F.R. § 8.4(b)(1)(vii) ............................................................................................... 31

24 C.F.R. § 8.4(b)(1)(viii) .............................................................................................. 31

24 C.F.R. § 8.4(d) .......................................................................................................... 31

24 C.F.R. § 8.4(b)(1)(vii) ............................................................................................... 31

28 C.F.R. § 35.130(b)(7) ................................................................................................ 28

28 C.F.R. § 42.503 ......................................................................................................... 31

28 C.F.R. § 35.130(d) .................................................................................................... 27

29 U.S.C. § 794a ............................................................................................................... 1

29 U.S.C § 794a(a)(2) .................................................................................................... 30

29 U.S.C. § 794(b)(1)(A) ............................................................................................... 29

42 C.F.R. § 3614. ........................................................................................................... 34

42 U.S.C. § 12131(2) ..................................................................................................... 27

42 U.S.C. § 2000e-5(g)(1) ............................................................................................. 34

42 U.S.C. § 2003a-3 ....................................................................................................... 34

42 U.S.C. § 3604(f)(1) ................................................................................................... 23

42 U.S.C. § 3604(f)(2) .................................................................. 21, 23

42 U.S.C. § 3613(c)(1) .................................................................. 33

42 U.S.C. §§ 12101-12203 ........................................................... 32

42 U.S.C. § 12188(a) ..................................................................... 1

42 U.S.C. § 2000a-3(a) .................................................................. 1

42 U.S.C. § 2000e-5(g)(1) .............................................................. 1

42 U.S.C. § 3602(h) ..................................................................... 21

42 U.S.C. § 3604(f)(1) .................................................................. 21, 22

42 U.S.C. § 3604(f)(3)(B) ............................................................. 23, 26

42 U.S.C. § 3613(c)(1) .................................................................. 1

Americans with Disabilities Act of 1990 .................................... passim

Americans with Disabilities Act, 42 U.S.C. §12131 ................... 27, 28

Americans with Disabilities Act, 42 U.S.C. Sec. 12132 ............. 27, 28

Fair Housing Act, Title VIII of Civil Rights Act of 1968 ........... passim

O. R.C. §5123.19(O) ..................................................................... 8

O. R.C. §121.22 ............................................................................ 16

O.R.C. §340.01(A)(3) .................................................................. 9

O.R.C. §340.032(A) ..................................................................... 6, 9

O.R.C. §340.032(A)(8)(b) ............................................................ 9

O.R.C. §340.034 ........................................................................... 5

O.R.C. §340.034(A)(B)(C) ........................................................... 9

O.R.C. §340.034(D) ..................................................................... 9

O.R.C. §340.034(F) ...................................................................... 9

O.R.C. §340.034(G) ........................................................................................ 9

O.R.C. §4112.01(A)(15) ............................................................................... 32

O.R.C. §5119.34(A) ........................................................................................ 8

O.R.C. §5119.34(B)(1)(b)(iii) ....................................................................... 8

O.R.C. §5119.34(B)(2) ................................................................................... 8

O.R.C. §5119.341(A) ................................................................................. 9, 24

O.R.C. 4112 ............................................................................................... 15, 32

O.R.C. 4112.01(A)(16)(a)(iii) ...................................................................... 32

O.R.C. Chapter 4112 ........................................................................... passim

O.R.C. Section 340.034(H) ........................................................................... 9

O.R.C. Section 4112.02(H) .......................................................................... 32

O.R.C. §§4112.01(A)(13) ............................................................................ 32

Rehabilitation Act Section 504, 29 U.S.C. §794 (1973) ................... passim

The Rehabilitation Act ........................................................................... 20, 30

Section 504 of the Rehabilitation Act .............................. 29, 32, 34, 36

## Rules

Rule 65 of the Federal Rules of Civil Procedure. ............................. 1, 19

Rule 65(b) of the Federal Rules of Civil Procedure ............................ 37

## Regulations

Munson Township Resolution Section 401.2(a) ....................................... 8

Munson Township Resolution Section 401.2(e) ................................. 8, 24

Munson Township Zoning Resolution Section 401.2 ............................ 12

**Other**

1988 U.S. Code Cong. & Admin. News 2173, 2179 ....................................................... 21

H.R. Rep. No. 711, 100th Cong., 2d Sess. 18 (1988) ................................................... 21

<u>**MEMORANDUM IN SUPPORT**</u>

Plaintiffs Lake-Geauga Recovery Centers, Inc. and Fair Housing Resource Center, Inc. bring this action and file the within Motion to enjoin Defendant Munson Township ("Munson Township") Defendant Dennis Pilawa ("Pilawa"), Defendant Danielle Pitcock ("Pitcock"), Defendant Don Alexander ("Alexander"), Defendant Joe Tomaric ("Tomaric"), Defendant Jim O'Neill ("O'Neill"), and Defendant James Herringshaw ("Herringshaw") (collectively, "Defendants") from continuing their illegal conduct which violates the Fair Housing Act, the Americans with Disabilities Act, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and Chapter 4112 of the Ohio Revised Code, and further directing Defendants to remedy the effects of their illegal, discriminatory conduct, described below and in the Complaint and to prevent similar occurrences in the future.

## I.      STATEMENT OF ISSUE PRESENTED

1.      Are Plaintiffs Lake-Geauga Recovery Centers, Inc. and Fair Housing Resource Center, Inc. entitled to a preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure, 42 U.S.C. §3613(c)(1), 42 U.S.C. §12188(a), 42 U.S.C. §2000a-3(a), 29 U.S.C. §794a, and 42 U.S.C. §2000e-5(g)(1)?

   a.   Have Lake-Geauga and FHRC demonstrated that there is a strong likelihood of success on the merits of their claims that Defendants have violated the Fair Housing Act, the Americans with Disabilities Act, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and Chapter 4112 of the Ohio Revised Code by enforcing the Munson Township Zoning Resolution in a discriminatory manner, subjecting Lake-Geauga to a discriminatory and unnecessary hearing before the Munson Township Board of Zoning Appeals, conducting illegal and improper public meetings in advance of and during a recess of the unnecessary hearing, and refusing Lake-Geauga and FHRC's requests for a reasonable accommodation under the Munson Township Zoning Resolution?

   b.   Will Lake-Geauga and FHRC suffer irreparable injury if the requested preliminary injunction is not granted when there is a substantial likelihood that Lake-Geauga and FHRC will prevail on the merits of their housing discrimination and civil rights claims, Lake-Geauga will lose grant funding and other monies necessary to provide housing to persons with a disability in Geauga County, and persons with a disability lose the ability to reside at Twelve Meadows and are

forced to suffer the consequences of not having available Level II Recovery Housing available to them?

c. Will the issuance of a preliminary injunction cause substantial harm to others if Defendants are enjoined from violating federal and state anti-discrimination and civil rights laws?

d. Will the public interest be served by the issuance of a preliminary injunction aimed at eliminating discrimination against individuals with disabilities?

## II.    STATEMENT OF FACTS[2]

### A.    Background Information.

Lake-Geauga is a 501(c)(3), non-profit corporation which has been providing continuous services to people recovering from alcohol and drug addictions in Lake and Geauga counties for 48 years.  Lake-Geauga's mission statement is: "[T]o promote lifelong recovery from addiction, through prevention, education and treatment, regardless of ability to pay," and to provide an improved quality of life through long term recovery. Lake-Geauga has earned a solid reputation for its effective outpatient and residential treatment programs and has achieved a success rate significantly higher than the national average for long-term sobriety.

In pursuit of that objective, Lake-Geauga provides persons recovering from alcohol and drug addictions with a variety of services, including outpatient treatment services, including intake, assessment, ambulatory detox, medication-assisted treatment, education, referral, drug and alcohol individual and group counseling, gender specific groups, dual diagnosis groups and individual counseling, minority-specific groups, family groups, aftercare, relapse prevention, intensive outpatient programs, Opiate Recovery Program, drug/alcohol testing, and psychiatric referrals; or long-term, non-medical residential treatment facilities, which operate twenty-four hours a day, seven days a week and  provide a home-like atmosphere with easy access to public

---

[2]  The facts stated here are all set forth in the *Complaint for Declaratory and Injunctive Relive and Monetary Damages*.

transportation, churches, stores, the YMCA, community 12-step meetings, and social service agencies.

In addition to those services, Lake-Geauga also operates five (5) Level II Recovery Houses in Lake and Geauga Counties. These houses provide a family living setting for five (5) adults who have completed primary substance abuse treatment programs, have been clean and sober for at least 30 days and who are seeking a drug and alcohol-free living environment ("Level II Recovery House"). The residents of a Lake-Geauga Level II Recovery House must be committed to a path of sobriety, a life of recovery and participate in approved recovery programs. They are employed in the community. A Level II Recovery House, often called a sober living home, has a live-in recovery house manager to monitor activities, offer support and maintain resident accountability. The house manager may be certified as a Peer Recovery Coach or a Chemical Dependency Counselor Assistant. The Ohio Revised Code does not require certification or licensing of a Level II Recovery House. However, Lake-Geauga's recovery houses are certified by the Ohio Recovery Housing Association.

There is a critical need for more sober housing options in Geauga County, including Level II Recovery Houses. Sober housing is a critical need upon discharge from treatment. Lake-Geauga works closely with local housing agencies to serve individuals in need of low-cost, longer-term individual housing units upon completion of primary treatment. While this benefits some, most of the available housing does not provide the structure, support and alcohol and drug-free living environment characteristic of a Level II Recovery House. A Level II Recovery House promotes long-term recovery, facilitates the individual's transition into the community and provides a safe, sober environment during the transition.

Level II Recovery Houses are incorporated into Lake-Geauga's established and approved Health and Safety Plan, Risk Management Plan, Quality Improvement Plan, Accessibility Plan and must follow Lake-Geauga's administrative policies and procedures.

In furtherance of Lake-Geauga's mission and in an effort to fill the critical need for sober housing options in Geauga County, in September of 2019, Lake-Geauga purchased a four-bedroom, two-bath house located at 12700 Ravenna Road, Munson Township, Ohio ("Twelve Meadows") to provide residential housing to five (5) unrelated adult women who have completed primary treatment and are sober and in recovery from alcohol or drug addiction. A house manager employed by Lake-Geauga also resides at Twelve Meadows.

Lake-Geauga purchased Twelve Meadows as a Level II Recovery House for the purpose of welcoming and assisting adult women of all ages trying to change their lives, sustain their recovery from addition and strengthen their family relationships. Lake-Geauga will ensure that the residents of Twelve Meadows have a supportive and safe environment where the hard and hopeful work toward recovery begins.

At Twelve Meadows, Lake-Geauga will accept adult women from Lake and Geauga Counties with substance use disorders who have been clean and sober for at least 30 days, are not a danger to themselves or others, and are able to live independently and care for their personal needs. Each resident must participate in an approved 12-Step program of her choice and be active in recovery. Admission requires two references from the following: 12-Step community, faith-based community or counseling professional, Intake Coordinator, Residential Treatment Manager, or Recovery House Manager. Conditions of admission and residency include: no use of alcohol or drugs, seek and find employment, active participation in a 12-Step program, attendance at four (4) or more 12-Step meetings or approved faith-based meetings per week, a

12-Step sponsor or an established peer support person or network, random drug testing, weekly attendance at house meetings, compliance with outpatient treatment services provided offsite (if needed), assisting with the proper care and maintenance of the recovery house and house chores. The house manager who lives on site monitors the activities of all residents.

At Twelve Meadows, Lake-Geauga will offer residents a structured environment with support services, predominately facilitated by peer providers, allowing each resident to transition from a very structured treatment environment to a more independent living situation with limited control and supervision.

Importantly, Lake-Geauga cannot limit the length of residence at Twelve Meadows under R.C. §340.034. Flexibility in length of stay allows the residents sufficient time to accumulate financial resources and strengthen their emotional stability thereby enabling each woman to establish a permanent, independent and healthy living arrangement. The average length of stay is eight or nine months but several residents have lived at a Level II Recovery House operated by Lake-Geauga for two (2) years or more.

Lake-Geauga provides administrative oversight and ensures that Twelve Meadows operates as a high-quality recovery house.

No treatment services are provided at Twelve Meadows. Twelve Meadows is simply a home for five (5) unrelated adult women recovering from alcohol or drug addiction living in a family setting.

Residents of Twelve Meadows will pay $80-$95 per week to help support the Home and the commitment of financial support from the Geauga County Board of Mental Health and Recovery Services (MHRS Board) will meet the annual cost of operating Twelve Meadows. In

addition, a portion of Lake-Geauga's fundraising proceeds and donations will be allocated to Twelve Meadows, if necessary, to offset the general operating expenses.

In addition to helping address the critical Level II Recovery House shortage in Geauga County, there is a significant economic impact to allowing five (5) unrelated adults with alcohol and drug addiction to reside at Twelve Meadows. Specifically, Lake-Geauga applied for a grant from the Ohio Department of Mental Health and Addiction Services ("OMHAS") in the amount of $334,561 for reimbursement of eligible acquisition expenses and operation costs related to Twelve Meadows. The grant was submitted by the Geauga County Board of Mental Health and Recovery Services (MHRS Board), which is the county agency under R.C. §340.032(A) with the authority to provide recovery services in Geauga County. The grant funding is made on a reimbursement basis, 75% by OMHAS and 25% by the Geauga MHRS Board. The application must: describe the facility, identify the services to be provided at the recovery house, the targeted population, describe consumer access to the recovery house, identify other available programs not on site, describe residents' responsibilities while living in the recovery house, describe anticipated operating expenses, and give assurances of compliance by Lake-Geauga with OMHAS' grant funding conditions. When OMHAS has determined that the project and operation of the recovery house comply with the application and assurances, Lake-Geauga will be reimbursed its acquisition costs and eligible expenses.

If Lake-Geauga does not provide housing for five (5) recovering adult women at Twelve Meadows, it will not receive the grant funds. Furthermore, Lake-Geauga cannot support the operation of Twelve Meadows with only two (2) persons residing at the home which is the maximum number of unrelated persons permitted to live in a single-family home under Munson Township's Zoning Resolution provision. More important than financial viability to Lake-

Geauga is the loss to five recovering women of a solid and structured support system to maintain sobriety if Lake-Geauga cannot operate Twelve Meadows.

Plaintiff Fair Housing Resources Center, Inc.'s ("FHRC") interests and objectives are aligned with Lake-Geauga. Specifically, FHRC aims to create and promote equal housing opportunities for all persons and to promote safe, decent and affordable housing in Lake, Geauga, and Ashtabula Counties and surrounding communities through education and involvement of the public, government, and the business community. In furthering this goal, FHRC provides counseling, guidance and support to individuals who encounter discrimination in their search for housing. This may include investigation of their complaints. The FHRC also engages in activities designed to encourage fair housing practices by educating consumers of their rights and professionals of their responsibilities under the Fair Housing Act, identifying barriers to fair housing in order to counteract and eliminate discriminatory housing practices, and by working with elected and government representatives to protect and improve fair housing laws. The FHRC also conducts research into housing and lending patterns, and related fair housing matters, throughout Northeast Ohio in order to educate government officials, individuals who work in the housing industry, and the public as a whole regarding housing discrimination and segregation.

### B. Munson Township's Zoning Resolution

Defendant Munson Township ("Munson Township") is a township organized under the laws of the State of Ohio and located in Geauga County, Ohio. Munson Township is the recipient of federal funding within the meaning of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794. Specifically, Munson Township has received federal funds as a sub-recipient of

Federal Grant No. 19(H)EPA-10 / MUNSON-FD31919 provided by the Environmental Protection Agency to the State of Ohio.

Pursuant to Chapter 519 of the Ohio Revised Code, Munson Township has enacted and enforces a Zoning Resolution ("Resolution") that regulates land use in the Township. Twelve Meadows is located in the R-1 Residential Zoning District and is used and operates as a single-family dwelling and home.

Resolution Section 401.2(a) provides that a single-family dwelling is a permitted land use in the R-1 Residential Zoning District.

The Resolution defines a "family" to include "[A] number of adult persons not exceeding two (2) living and cooking together as a single housekeeping unit though not related by blood, adoption, guardianship or marriage shall also be deemed to constitute a family, exclusive of live-in hired employees." Article 2.

Munson Township does not have a maximum occupancy cap based on square footage of a home for the R-1 District in the Resolution or elsewhere, and as such, Munson Township has no lawful basis for prohibiting up to five (5) unrelated adults with a disability and a house manager from living in a Level II Recovery House in the R-1 District.

Section 401.2(e) of the Resolution also allows a licensed residential facility as defined in R.C. §5123.19(O) as a permitted use in the R-1 District. The services provided by a Class Two Residential Facility and a Level II Recovery House are quite similar:

    a. A Class Two "residential facility" is a publicly or privately operated home or facility that provides accommodations, supervision, and personal care services to three to sixteen adults. R.C. §5119.34(B)(1)(b)(iii). The services provided are defined in R.C. §5119.34(A). Activities which a residential facility may not perform, all of which require licensing under a different service provider category, are listed in R.C. §5119.34(B)(2). A Class Two residential facility providing accommodations and personal care services for one to five unrelated

persons and licensed by OMHAS is a permitted use in any residential district or zone of any political subdivision. R.C. §5119.341(A).

b. The Revised Code defines "Recovery Housing" as "housing for individuals recovering from alcoholism or drug addiction that provides an alcohol and drug free living environment, peer support, assistance with obtaining alcohol and drug addiction services, and other alcoholism and drug addiction recovery assistance." R.C. §340.01(A)(3). Each county board of alcohol, drug addiction and mental health services ("Board") shall establish a community-based continuum of care. R.C. §340.032(A). Several essential services are identified in R.C. §340.032: necessary services to meet basic human needs (food, clothing, shelter, medical, personal safety, and income), (A)(2)(b); residential services, (A)(5); recovery supports, including peer support, a wide range of housing including recovery housing, and assistance with activities of daily living and social skills, (A)(8)(a), (b), (d). Residents may receive medication-assisted treatment and certified addiction services. R.C. §340.034(G), (H). Recovery housing is required to be included in every county's community based continuum of care and shall be made available in the service district of each Board. R.C. §340.032(A)(8)(b). A recovery house shall not be subject to licensing or certification by OMHAS. R.C. §340.034(A)(B)(C). Each recovery house shall establish a protocol for administrative oversight, quality standards and policies and procedures including the rules which each resident must obey. R.C. §340.034(D). *The duration of the stay of the resident may not be limited*, R.C. §340.034(F).

The Revised Code recognizes congregate living of up to five (5) adults as a protected class in a "licensed residential facility" located in a single-family residential zoning district. R.C. §5119.341(A).

C. **Lake-Geauga's Efforts to Operate Twelve Meadows have been stymied by Defendants' Discriminatory Actions.**

Before Lake-Geauga purchased Twelve Meadows, the property was used as a single-family residence. Lake-Geauga currently uses Twelve Meadows as a single-family residence which is currently occupied by one (1) disabled resident and a house manager. Lake-Geauga will continue the single-family residential use by allowing for five (5) unrelated adult females recovering from addiction to live and cook together as a single housekeeping unit at Twelve Meadows.

On October 28, 2019, after purchasing Twelve Meadows, Lake-Geauga's President and CEO, Melanie Blasko ("Blasko"), received a letter from Munson Township Zoning Inspector, Defendant James Herringshaw, dated October 9, 2019, advising Blasko that Lake-Geauga needed to apply for a zoning certificate.

On November 1, 2019, Blasko called Herringshaw to discuss what steps, if any, Lake-Geauga needed to take in order for Lake-Geauga to begin operating Twelve Meadows as a Level II Recovery House.

After several emails and a meeting, Herringshaw advised Blasko that Lake-Geauga needed to pay Munson Township $300.00 and file an application for a zoning certificate. Herringshaw provided Blasko a form zoning certificate application form.

Pursuant to Section 1201 of the Resolution, "[N]o person shall change any use of land, a building, or a structure, nor locate, relocate, erect, construct, reconstruct, enlarge or structurally alter any building or structure within Munson Township without first obtaining a zoning certificate." Because no structural changes were made to the residence at Twelve Meadows, and contrary to Herringshaw's instructions, Lake Geauga did not need to obtain a zoning certificate.

Notwithstanding the fact that no zoning certificate was necessary, and based on Herringshaw's recommendation, Lake-Geauga filed an application for a zoning certificate on December 23, 2019, to use Twelve Meadows as a single-family Level II Recovery House. No other information, such as a number of occupants or detailed description of the use, was requested in the form application or verbally by Herringshaw.

Upon submittal, Herringshaw immediately denied Lake-Geauga's application for a zoning certificate. Herringshaw did not provide a basis for immediately denying Lake-Geauga's application for a zoning certificate. However, on information and belief, Herringshaw denied

Lake-Geauga's application from a zoning certificate based on his erroneous conclusion that a Level II Recovery House is not a single-family residence and, therefore, is not a permitted use in the R-1 District under Resolution Section 401.2.

Herringshaw should have interpreted the Resolution definition of "family" to include the additional four (4) unrelated persons requested by Lake-Geauga as a reasonable accommodation for a single-family home use under preemptive federal law and without subjecting Lake-Geauga to a discriminatory *public* hearing before the Munson Township Board of Zoning Appeals ("BZA").

After denying Lake-Geauga's application for a zoning certificate without explanation, Herringshaw instructed Blasko to immediately file a Notice of Appeal Variance Request form.

The timing and basis of Herringshaw's decision to deny Blasko's decision was suspicious, and in retrospect, it strongly suggests that there was a concerted effort among and between Defendants to mislead Blasko into pursing a "variance" with the BZA, rather than an appeal of the Zoning Inspector's decision to the BZA (to the extent that the two are not functionally the same).

Relying on Herringshaw's instruction, Blasko, who is not an attorney, signed and submitted a Notice of Appeal Variance Request form on December 23, 2019. Munson Township does not have a form document used to appeal a decision of the Zoning Inspector. Therefore, in completing the Notice of Appeal Variance Request form at Herringshaw's request, Blasko believed she was appealing Herringshaw's decision. Regrettably, as discussed below, Defendants would use Blasko's reliance on Herringshaw's instruction against Lake-Geauga and FHRC during the BZA hearing by claiming that the BZA's review was limited to a variance request, not an appeal of Herringshaw's decision.

Herringshaw inserted the regulation from which a variance was requested in Section 2 of the Notice of Appeal Variance Request form, specifically citing Section 401.2 of the Munson Township Zoning Resolution.

By requiring Lake-Geauga to file a Notice of Appeal Variance Request form, Herringshaw was causing Lake-Geauga's application to be reviewed by the BZA.

The BZA hearing was originally scheduled for January of 2020, but was continued to a later date.

When it became apparent that Munson Township, Herringshaw, and, ultimately, the BZA were going to be guided by their and/or community members' prejudices, biases, and discriminatory animus against the residents of Twelve Meadows, FHRC got involved by opening an investigation and preparing to educate Township officials and the public about the provisions of the Fair Housing Act and other civil rights laws that prohibit housing discrimination on the basis of disability. FHRC provided Lake-Geauga with assistance and resources for how Lake-Geauga could address the issues that might be raised in a community forum and provided education about fair housing laws and zoning laws that govern Lake-Geauga's use of Twelve Meadows.

On February 25, 2020, Lake-Geauga asked Herringshaw and Munson Township to grant Lake-Geauga a reasonable accommodation under applicable civil rights laws to allow the five (5) women in a protected class to reside at Twelve Meadows with a house manager. Lake-Geauga explained that, although the Resolution limits occupants to two (2) unrelated adults, the FHA , ADA, and Chapter 4112 of the Ohio Revised Code prohibit housing discrimination against the disabled, that those laws require reasonable accommodations to be made to zoning regulations that otherwise restrict housing availability for the disabled, and that the manner in which Munson

Township and Herringshaw were enforcing the Resolution was discriminating against the disabled in violation of those laws. Lake-Geauga also specifically explained to Munson Township that a person whose drug or alcohol addiction substantially limits one or more major life activities is legally disabled, and prohibiting five (5) unrelated adults comprising a disabled protected class from residing in a single-family house is discrimination in violation of the FHA, ADA, §504, and Chapter 4112 of the Ohio Revised Code.

Under these laws, Munson Township may not deny a request for reasonable accommodation that is related to the disabilities of the proposed residents unless the accommodation would impose an undue financial and administrative burden on the Township. The requested accommodation by Lake-Geauga was related to disabled residents who are a protected class, and whose occupancy of Twelve Meadows would not pose an undue financial or administrative burden upon the Township and no credible evidence supported any such finding.

In light of the legal issues raised by Lake-Geauga, Lake-Geauga respectfully implored Herringshaw to exercise his inherent authority to reconsider his prior decision, rescind his denial of the zoning certificate, and grant Lake-Geauga a reasonable accommodation to the Resolution.

Herringshaw did not follow the law and recognize Twelve Meadows as either being permitted in the R-1 District or its entitlement to a reasonable accommodation. Instead, he improperly held steadfast to the mistaken decision that a zoning certificate could not be granted in this instance.

After being educated once again on Lake-Geauga's rights under federal and state law, and being asked to provide a reasonable accommodation to Lake-Geauga's requests, Munson Township doubled down on its decision that a variance was necessary, and also provided a *post hoc* justification for denying Twelve Meadows request for a reasonable accommodation -- i.e.,

now, Munson Township was denying Lake-Geauga's request on the basis that Lake-Geauga would be illegally providing "temporary housing" for transient persons. This purported justification was an unfounded pretext to justify the Defendants' otherwise unlawful decision.

Indeed, through its legal counsel, Munson Township took the factually unsupported position that the residency of the five (5) adult women at Twelve Meadows is "temporary," is not within the definition of "family", and is, therefore, a violation of the Resolution.

Lake-Geauga also informed Munson Township that conducting a BZA hearing on Lake-Geauga's request was clearly an action that would lead to public expressions of fears, prejudices, stereotypes, and unsubstantiated assumptions that Munson Township, Herringshaw, the BZA and the community may have about current or prospective residents of Twelve Meadows because of their protected characteristics. Further, Lake-Geauga informed Defendants that, in 2016, the U.S. Department of Justice ("DOJ") and the U.S. Department of Housing and Urban Development ("HUD") released a joint statement on "State and Local Land Use Laws and Practices and the Application of the Fair Housing Act" ("2016 Joint Statement") explaining that: "…local governments may not act because of the fears, prejudices, stereotypes, or unsubstantiated assumptions that community members may have about current or prospective residents because of the residents' protected characteristics. Doing so violates the Act, even if the officials themselves do not personally share such bias."

**D.** **Despite Lake-Geauga's requests and protestations, Munson Township forces Lake-Geauga to participate in a contentious, discriminatory, and harassing public hearing before the BZA.**

On July 29, 2020, despite Lake-Geauga's requests and protestations, the BZA conducted a quasi-judicial hearing with public participation and comment on the "Notice of Appeal Variance Request" recommended by Herringshaw which aimed to have the BZA consider

whether to grant a use variance to allow five (5) unrelated adults in a protected class to live and cook together as a single housekeeping unit at Twelve Meadows.

The BZA had the authority to grant a reasonable accommodation to the Resolution's "family" definition through two methods: (a) granting Lake-Geauga's appeal of Zoning Inspector Herringshaw's interpretations of the Resolution that did not allow the proposed use; or (b) granting a variance from the Resolutions' provisions based on preemptive federal discrimination laws; and the BZA could have done so without subjecting Lake-Geauga and its clientele to a "*public* hearing" in which it allowed participation by any community member and their expressions of irrelevant and discriminatory opinions. The BZA's hearing could have been limited to a quasi-judicial hearing in which the presentation was limited to the legal issues (FHA, ADA, §504, and O.R.C. 4112) and the undisputed evidence that the persons being proposed to live in the home are a protected classification of disabled persons.

By requiring and by their participation in the BZA hearing, by allowing public participation and comment at the BZA hearing, and by ignoring Lake-Geauga's request to simply overturn Zoning Inspector Herringshaw's interpretations of the Resolution so as to provide a reasonable accommodation, and ultimately only voting to deny a use variance (that was not requested), Defendants Pilawa, Pitcock, Alexander, Tomaric, and O'Neill acted with improper and illegal discriminatory animus and intent, prohibited under the FHA, ADA, §504 and Ohio Revised Code Chapter 4112.

In fact, the BZA specifically refused to consider Lake-Geauga's request that it treat the hearing as an appeal of Herringshaw's refusal to grant Lake-Geauga's request for a reasonable accommodation to allow five (5) unrelated adult women recovering from alcohol or drug

addiction to live in a single-family setting at Twelve Meadows – a process that would have avoided the rancorous community members' discriminatory outrage.

On information and belief, immediately prior to the public meeting on July 29, 2020, and in violation of Ohio's Open Meetings Act (R.C. §121.22), Defendants Pilawa, Pitcock, Alexander, Tomaric, and O'Neill met to discuss the issues raised by Lake-Geauga in its appeal to the BZA.

The BZA's hearing was a farce, lasting four and one-half hours, less than half of which was comprised of Lake-Geauga being permitted to offer credible evidence as to: the legally-recognized disabilities of the current and proposed Twelve Meadows' residents, the eminently responsible manner in which Twelve Meadows would be operated in compliance with the law, and the hostility it was already experiencing from the community – i.e., private security cameras pointed at Twelve Meadows, unknown occupied vehicles parking outside the house, the posting of lawn signs opposed to Twelve Meadows, etc.

The majority of the BZA hearing was comprised of public comment based on fears, prejudice, and a discriminatory animus towards persons recovering from alcohol or drug addiction. To highlight a few comments:

    a. The Munson Township Fire Chief testified in opposition to a variance and/or to grant Lake-Geauga a reasonable accommodation, in part, because he theorized it would increase transportation costs to be borne by the Fire Department because residents at Twelve Meadows would use services more than others within Munson Township, may not have the means to pay for these services, and would not pay taxes to the Township. He also offered his admitted unqualified and legally unsupported opinion that allowing five (5) unrelated females in recovery from addiction at Twelve Meadows would require a reclassification under the Ohio Building Code, and could result in violations of the Ohio Building Code to be found.

    b. Members of the public expressed concern that, if Twelve Meadows were permitted to operate as requested, their children would be in danger because they would be treated by Twelve Meadows' residents and their guests as

"targets"; children might find dangerous trash, debris, or needles on or near the property; and there would be an increase in crime on the property.

c.  A member of the public offered testimony that he believed allowing Lake-Geauga to operate Twelve Meadows would significantly disrupt traffic and the stated absurdity that it would change the flow of groundwater to such an extent that it would harm other property owners.

It was unnecessary and improper for the BZA to hear hours of unsupported objections by the general public to the use of Twelve Meadows as a recovery house that were of no evidentiary value and were merely an expression of opinions or subjective complaints based on prejudicial beliefs about persons recovering from alcohol or drug addiction. *See Lucas v. Forty-Fourth General Assembly of Colorado,* 377 U.S. 713, 736-737, 84 S.Ct. 1459, 1473-1474, 12 L.Ed.2d 632 (1964); *Palmore v. Sidoti,* 466 U.S. 429, 433, 104 S.Ct. 1879, 1882, 80 L.Ed.2d 421 (1984). *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 438 (1985); and *Adelman Real Estate Co. v. Gabanic*, 109 Ohio App.3d 689, 694 (Geauga 1996).

After taking evidence, Pilawa stated the Board was going to take a ten-minute break and during that break, Pilawa, Pitcock, Alexander, Tomaric, and O'Neill adjourned into a second illegal and improper meeting in violation of Ohio's Open Meetings Act where they engaged in deliberation and discussion over how to deny Lake-Geauga a use variance.

Ultimately, but unsurprisingly, the BZA unanimously voted to deny Lake-Geauga a use variance. This decision to deny was made with discriminatory intent, and based on the public comments made at the public hearing. Significantly, the BZA also acted in a discriminatory manner by concluding that because Lake-Geauga filed a Notice of Appeal Variance Request form (at Herringshaw's instruction), Lake-Geauga was not appealing Herringshaw's decision to deny Lake-Geauga's request for a zoning certification, but instead was only pursing a "use" variance from the Zoning Resolution. This scheme was seemingly concocted by Defendants so

they could justify their discriminatory conduct by hiding behind arguments pertaining to timeliness, waiver, and the factors that Ohio law requires in order for a board of zoning appeals to grant a use variance, and deliberately avoid consideration of the preemptive civil rights laws entitling Lake-Geauga to the requested accommodation.

E.     **Lake-Geauga continues to suffer irreparable loss and injury as a result of Defendants illegal conduct.**

As a result of Defendants' unlawful actions, Lake-Geauga has suffered, continues to suffer, and will in the future suffer, great and irreparable loss and injury, including but not limited to economic losses, injury to reputation, interference with Lake-Geauga's ability to carry out its mission to serve people recovering from substance use disorders in residential settings and deprivation of Lake-Geauga's ability to serve potential residents with disabilities in Munson Township and throughout Lake and Geauga Counties, not the least of which is that Lake-Geauga's clientele are unable to benefit from those services.

Defendants' actions have exposed Lake-Geauga and its officials, employees, clientele-residents, and potential clientele-residents to community hostility and to adverse and false understandings of persons who are in recovery from substance use disorders that Lake-Geauga is serving and intends to serve at Twelve Meadows.

As a result of Defendants' actions, Lake-Geauga has had to forego operating Twelve Meadows as a sober living home for nearly a whole year, and it has been obstructed from fulfilling its mission and its ongoing operations to provide sober living services to women needing sober living options in Munson Township and Geauga County.

Defendants' efforts to preclude the operation of and undermine Plaintiffs' attempts to establish a sober living home at Twelve Meadows have caused significant reputational harm to

Lake-Geauga, putting it at a disadvantage with respect to future service contracts and charitable contributions upon which it depends for its existence.

As a result of Defendants' discriminatory actions, Lake-Geauga has incurred administrative, operational and legal costs associated with the obstruction and delay of its plan to open the Twelve Meadows as a sober living home, including costs to counter Defendants' discriminatory conduct.

In light of substantial likelihood that Lake-Geauga will prevail on the merits of its Complaint, the great and irreparable loss and injury Lake-Geauga has sustained and will continue to sustain; the fact that issuance of a preliminary injunction would cause no substantial harm to others; and the fact that the public interest would be served by issuance of a preliminary injunction, Lake Geauga now moves for a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure.

## III. LAW AND ARGUMENT

### A. *Factor Test for Issuance of a Preliminary Injunction.*

An injunction is a judicial process or mandate operating *in personam. Nken v. Holder*, 556 U.S. 418, 428, 129 S.Ct. 1749, 1757 (2009). In other words, an injunction is a means by which a court tells someone what to do or not to do. *Id*. When a court employs the extraordinary remedy of injunction, it directs the conduct of a party, and does so with the backing of its full coercive powers. *Id*. (internal citations omitted). This is so whether the injunction is preliminary or final; in both contexts, the order is directed at someone, and governs that party's conduct. *Id*.

When deciding whether to issue a preliminary injunction, a district court considers the following four factors: (1) whether the movant has a "strong" likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a

preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction. *McPherson v. Michigan High Sch. Athletic Ass'n,* 119 F.3d 453, 459 (6th Cir.1997) (*en banc*) (quoting *Sandison v. Michigan High Sch. Athletic Ass'n,* 64 F.3d 1026, 1030 (6th Cir.1995)). These factors are to be balanced against one another and should not be considered prerequisites to the grant of a preliminary injunction. *See United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Reg'l Transit Auth.,* 163 F.3d 341, 347 (6th Cir.1998); *McPherson,* 119 F.3d at 459. The Sixth Circuit Court of Appeals reviews the district court's decision for an abuse of discretion. *See McPherson,* 119 F.3d at 459. Thus, "the district court's 'weighing and balancing of the equities of a particular case is overruled only in the rarest of cases.'" *Id.* (quoting *Sandison,* 64 F.3d at 1030). Moreover, the district court's factual findings must be clearly erroneous in order for the appellate court to find that it abused its discretion. *See UFCW,* 163 F.3d at 347.

> **B.** **The Factors Weigh in Favor of Issuing the Preliminary Injunction.**

The Complaint alleges violations of three federal statutes: the FHA, the Rehabilitation Act, and the ADA, as well as Chapter 4112 of the Ohio Revised Code. There is a substantial likelihood that Plaintiffs will prevail on the merits of each claim; Lake-Geauga would suffer irreparable injury if the injunction is not granted; issuance of a preliminary injunction would cause no substantial harm to others; and the public interest would be served by issuance of a preliminary injunction. All four of the factors weigh in favor of this Court issuing the preliminary injunction.

> **1.** **There is a strong likelihood that Lake-Geauga will prevail on the merits of each of its claims.**

> > **a.** **Defendants have engaged in unlawful disability discrimination under the federal Fair Housing Act.**

The Fair Housing Act "is a clear pronouncement of a national commitment to end the unnecessary exclusion of persons with handicaps from the American mainstream. It repudiates the use of stereotypes and ignorance, and mandates that persons with handicaps be considered as individuals. Generalized perceptions about disabilities and unfounded speculations about threats to safety are specifically rejected as grounds to justify exclusion…" H.R. Rep. No. 711, 100th Cong., 2d Sess. 18 (1988), reprinted at 1988 U.S. Code Cong. & Admin. News 2173, 2179.

Lake-Geauga is associated with and serves individuals who have "handicaps" within the meaning of the Fair Housing Act, 42 U.S.C. §3602(h)[3], specifically, the potential residents of Twelve Meadows who are in recovery from alcohol or drug addiction.

Under 42 U.S.C. §3604(f)(1), it is unlawful to discriminate in the sale or rental, or to otherwise make available or deny, a dwelling to any buyer or renter because of a handicap of that buyer or renter; a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or any person associated with that buyer or renter.

Similarly, under 42 U.S.C. § 3604(f)(2) it is unlawful to discriminate in the terms, conditions, and privileges of the sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a "handicap" of that person; or a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or any person associated with that person.

Defendants have violated 42 U.S.C. §3604(f)(1) and (2) by engaging in the following improper conduct, among other things:

(a) Enforcing the Resolution's definition of "family," which is discriminatory on its face in that it does not permit more than two (2) unrelated adult persons

---

[3] 42 U.S.C. §3602(h) provides: "Handicap" means, with respect to a person—(1) a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) a record of having such an impairment, or (3) being regarded as having such an impairment, but such term does not include current, illegal use of or addiction to a controlled substance (as defined in section 802 of Title 21)."

with a disability to live together in a single-family home in the R-1 District and has unjustifiable discriminatory effect on handicapped persons;[4]

(b) Unnecessarily requiring Lake-Geauga to obtain a zoning certificate and then denying Lake-Geauga's application for a zoning certificate;

(c) Instructing Lake-Geauga to file a "Notice of Appeal Variance Request" form and then deciding that Lake-Geauga failed to timely appeal the decision of the Zoning Inspector decision because Lake Geauga used a "Notice of Appeal Variance Request" form, not another form (that did not exist) that specifically stated Lake-Geauga was appealing the decision of the Zoning Inspector;

(d) Subjecting Lake-Geauga to a discriminatory and unnecessary hearing before the BZA where Lake-Geauga was forced to hear hours of unsupported objections by the general public to the use of Twelve Meadows as a recovery house that were of no evidentiary value and were merely an expression of subjective opposing opinions based on prejudicial beliefs about persons recovering from alcohol or drug addiction;

(e) By requiring and participating in the BZA *public* hearing, ignoring Lake-Geauga's request to simply overturn Zoning Inspector Herringshaw's interpretations of the Resolution so as to provide a reasonable accommodation, and ultimately only voting to deny a use variance (that was not requested);

(f) By the BZA specifically refusing to consider Lake-Geauga's request that it treat the BZA's hearing as an appeal of Herringshaw's refusal to grant Lake-Geauga's request for a reasonable accommodation to allow five (5) unrelated adult women recovering from alcohol or drug addiction to live in a single-family setting at Twelve Meadows – a process that would have avoided the rancorous community discriminatory outrage; and

(g) Holding two illegal public meetings in violation of Ohio's Open Meetings Act—immediately before the BZA hearing took place, and during a "recess" from the BZA hearing approximately ten minutes before the BZA decided Lake-Geauga's variance.

Collectively and individually, this conduct has the intent and effect of discriminating

against "handicapped" persons in violation of 42 U.S.C. §3604(f)(1) by making a dwelling

---

[4] While the Supreme Court has not struck down zoning resolutions that define "family" to a specified number of unrelated individuals who may live together as a family in a single-family dwelling as *per se* violations of the FHA, the Court has noted that such restrictions could be struck down if the restrictions have the intent *or effect* of discriminating against persons with a disability. *City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 115 S.Ct. 1776, 1777, 131 L.Ed.2d 801 (1995). Defendants' enforcement of the Resolution's definition of "family" has the intent or effect of discriminating against persons with a disability.

(Twelve Meadows) unavailable to potential renters and persons associated with that renter (the dependents of the renter) because of a handicap of that renter. Similarly, this conduct has the collective and individual intent and effect of discriminating against "handicapped" persons in violation of 42 U.S.C. § 3604(f)(2) by discriminating in the terms, conditions, and privileges of Lake-Geauga's rental of Twelve Meadows because of a "handicap" of potential renters of Twelve Meadows.

There is a strong likelihood that Lake-Geauga will prevail on its claim that Defendants violated 42 U.S.C. § 3604(f)(1) and (2). This factor weighs heavily in favor of granting the requested injunction.

> **b.** **Defendants have violated 42 U.S.C. §3604(f)(3)(B) by refusing to make reasonable accommodations in the Resolution when such accommodations are necessary to afford a person with a disability an equal opportunity to use and enjoy Twelve Meadows.**

Defendants' refusal to provide Lake-Geauga with a reasonable accommodation to allow five (5) persons with a handicap under the FHA (sober adults in recovery from alcohol or drug addiction) to reside at Twelve Meadows with a house manager violates 42 U.S.C. §3604(f)(3)(B).

42 U.S.C. §3604(f)(3)(B) prohibits discriminatory acts including "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling."

Munson Township, its Zoning Resolution, and its failure to provide Lake-Geauga with a reasonable accommodation are subject to review under the FHA. *Howard v. City Beavercreek*, 276 F.3d 802, 806 (6th Cir. 2002) (explaining that the FHA "creates an affirmative duty on municipalities to afford its disabled citizens reasonable accommodations in its municipal zoning

practices if necessary to afford such persons equal opportunity in the use and enjoyment of their property."); *Larkin v. Michigan Dept. of Social Services*, 89 F.3d 285 (6th Cir. 1996); *Smith v. Lee Associates v. City of Taylor*, 19 F.3d 920 (6th Cir. 1993).

In *Howard,* 276 F.3d at 806, the Sixth Circuit Court of Appeals established a rubric for determining whether an accommodation is required under the FHA:

> the three operative elements are "reasonable," "equal opportunity" and "necessary." *See Smith,* 102 F.3d at 794. An accommodation is "reasonable" when it imposes no "fundamental alteration in the nature of the program" or "undue financial and administrative burdens." *Id.* at 795 (quoting *Southeastern Community College v. Davis,* 442 U.S. 397, 410, 412, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979)). "Equal opportunity" under the FHA is defined as "giving handicapped individuals the right to choose to live in single-family neighborhoods, for that right serves to end the exclusion of handicapped individuals from the American mainstream." *Id.* at 794–95. Linked to the goal of equal opportunity is the term "necessary." *Id.* at 795. In order to prove that an accommodation is "necessary," "[p]laintiffs must show that, but for the accommodation, they likely will be denied an equal opportunity to enjoy the housing of their choice." *Id.* (citing *Bronk v. Ineichen,* 54 F.3d 425, 429 (7th Cir.1995) ("[T]he concept of necessity requires at a minimum the showing that the desired accommodation will affirmatively enhance a disabled plaintiff's quality of life by ameliorating the effects of the disability.")).

Lake-Geauga's requested accommodation is "reasonable" under *Howard*. The requested accommodation imposes no undue financial or administrative burdens on Munson Township. Indeed, the Munson Township Zoning Resolution already permits congregate living of up to five (5) unrelated persons in a "licensed residential facility"[5] located in a single-family residential zoning district. *See* Resolution, §401.2(e); R.C. 5119.341(A). If at least one other group of five unrelated adult "handicapped" persons can reside in the R-1 District, then Defendants cannot legitimately take the position that allowing five unrelated "handicapped" persons to reside at Twelve Meadows imposes an undue financial or administrative burden. Furthermore, there was

---

[5] It should be noted that the services provided by a "licensed residential facility" permitted under the Resolution Facility and a Level II Recovery House are quite similar.

no objective relevant evidence presented at the BZA hearing establishing any undue financial or administrative burden to be caused by Twelve Meadows proposed use.

Also, it is well-settled law that restrictions on the maximum number of occupants are best when based on reasonable square footage per person requirements for residential dwellings, as well as based on total living and bedroom areas of homes. *Fair Housing Advocates Ass'n., Inc. v. City of Richmond Hts., Ohio*, 209 F3d 626, 636 (6th Cir. 2000). Yet Munson Township does not have a maximum occupancy cap based on square footage of a home for the R-1 District in the Resolution or elsewhere. As such, Munson Township has no lawful basis for prohibiting up to five (5) unrelated "handicapped" adults and a house manager from living in a Level II Recovery House in the R-1 District.

Lake-Geauga's requested accommodation provides handicapped persons an "equal opportunity" for the right to choose to live in Munson Township's R-1 District. As stated in *Howard*, *supra* "Equal opportunity" under the FHA is defined as "giving handicapped individuals the right to choose to live in single-family neighborhoods, for that right serves to end the exclusion of handicapped individuals from the American mainstream." Handicapped persons with alcohol or drug additions have limited ability to reside in single-family neighborhoods, particularly in light of the fact that there is a critical need for Level II Recovery Housing in Geauga County. Allowing Lake-Geauga to use Twelve Meadows is therefore necessary to ensure that those handicapped persons have the right to choose to live in single-family neighborhoods in Munson Township and are not excluded from the American mainstream. Lake-Geauga's requested accommodation provides an equal opportunity for "handicapped" persons to live in Munson Township's R-1 District.

Finally, Lake-Geauga's requested accommodation is "necessary." As *Howard*, *supra*, instructs, in order to prove that an accommodation is "necessary," "[p]laintiffs must show that, but for the accommodation, they likely will be denied an equal opportunity to enjoy the housing of their choice." Put simply, but for the requested accommodation, Lake-Geauga and the actual and prospective tenants of Twelve Meadows will be denied an equal opportunity to enjoy the housing of their choice in the R-1 District since there is a shortage of Level II Recovery Housing in Geauga County, and denying the requested accommodation will only perpetuate that shortage in the future and exacerbate the ability of handicapped persons to enjoy the housing of their choice. Moreover, if Lake-Geauga cannot house five handicapped persons at Twelve Meadows, it cannot secure the $334,561 grant from OMHAS reimbursement of eligible acquisition and operation costs related to Twelve Meadows. The unfortunate, dramatic, and unavoidable consequence of Lake-Geauga not receiving the OMHAS grant is that Lake-Geauga cannot operate Twelve Meadows, the dearth of Level II Recovery Housing in Geauga County will remain unaddressed, and the handicapped persons recovering from alcohol and drug addiction will not have an opportunity to reside in a single-family housing setting of their choice. Naturally, this Court must therefore conclude that the requested accommodation is "necessary."

There is a strong likelihood that Lake-Geauga will demonstrate that its requested accommodation to allow five (5) persons with a handicap under the FHA (sober adults in recovery from alcohol or drug addiction) to reside at Twelve Meadows with a house manager is "reasonable," ensures "equal opportunity," is "necessary," and as a consequence, Defendants refusal to provide that accommodation violates 42 U.S.C. §3604(f)(3)(B). This factor weighs heavily in favor of the granting the requested injunction.

> **c.** **Defendants violated the Americans with Disabilities Act by discriminating against persons with a disabilities.**

Defendants' actions violate the Americans with Disabilities Act, 42 U.S.C. §12131, *et seq.*, and its implementing regulations, which require Munson Township to administer all of its programs and activities—including its legislative, executive, zoning, and code enforcement functions—in a manner that does not discriminate on the basis of disability, and to "administer [its] services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. §35.130(d).

Further, 42 U.S.C. §§12131 and 12132 prohibit Defendants from subjecting to discrimination or excluding a qualified individual with a disability[6] (persons recovering from alcohol or drug addiction) by reason of such disability, from participation in or denying that person the benefits of services, programs, or activities of a public entity. Defendants have subjected qualified individuals with a disability to discrimination by:

(a) Enforcing the Resolution's definition of "family," which is discriminatory on its face in that it does not permit more than two (2) unrelated adult persons with a disability to live together in a single-family home in the R-1 District;

(b) Unnecessarily requiring Lake-Geauga to obtain a zoning certificate and then denying Lake-Geauga's application for a zoning certificate;

(c) Instructing Lake-Geauga to file a "Notice of Appeal Variance Request" form and then deciding that Lake-Geauga failed to timely appeal the decision of the Zoning Inspector decision because Lake Geauga used a "Notice of Appeal Variance Request" form, not another form (that did not exist) that specifically stated Lake-Geauga was appealing the decision of the Zoning Inspector;

(d) Subjecting Lake-Geauga to a discriminatory and unnecessary hearing before the BZA where Lake-Geauga was forced to hear hours of unsupported objections by the general public to the use of Twelve Meadows as a recovery house that were of no evidentiary value and were merely an expression of

---

[6] 42 U.S.C. § 12131(2) states that the term "qualified individual with a disability" means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

subjective opposing opinions based on prejudicial beliefs about persons recovering from alcohol or drug addiction;

(e) By participating in the BZA public hearing, ignoring Lake-Geauga's request to simply overturn Zoning Inspector Herringshaw's interpretations of the Resolution so as to provide a reasonable accommodation, and ultimately only voting to deny a use variance (that was not requested);

(f) By the BZA specifically refusing to consider Lake-Geauga's request that it treat the BZA's hearing as an appeal of Herringshaw's refusal to grant Lake-Geauga's request for a reasonable accommodation to allow five (5) unrelated adult women recovering from alcohol or drug addiction to live in a single-family setting at Twelve Meadows – a process that would have avoided the rancorous community discriminatory outrage;

(g) Holding two illegal public meetings in violation of Ohio's Open Meetings Act—immediately before the BZA hearing took place, and during a "recess" from the BZA hearing approximately ten minutes before the BZA decided Lake-Geauga's variance.

There is a strong likelihood that Lake-Geauga will prevail on establishing that this conduct violates 42 U.S.C. §§12131 and 12132. As such, this factor weighs heavily in favor of granting Plaintiffs the requested injunction.

> **d.** **Defendants violated the Americans with Disabilities Act by failing to make a reasonable accommodation in its policies and practices that were necessary to avoid discrimination of persons with disabilities.**

The ADA's implementing regulations further provide that, "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7).

Courts apply the same standard to evaluate requests for reasonable accommodation under the ADA and FHA. *Vance v. City of Maumee, Ohio*, 960 F.Supp.2d 720, 728 (N.D. Ohio 2013) citing to *Harding v. City of Toledo*, 433 F.Supp.2d 867, 872 (N.D. Ohio 2006)

(citing *Oconomowoc Residential Programs, Inc. v. City of Milwaukee,* 300 F.3d 775, 783 (7th Cir.2002)). As described *supra*, Defendants failed to grant Lake-Geauga's request for a reasonable accommodation to allow up to five (5) unrelated adults recovering from alcohol or drug addiction to reside in the R-1 District in a single-family home.

Defendants have therefore violated the ADA by failing to make a reasonable accommodation in its policies and practices that were necessary to avoid discrimination of persons with a disabilities. There is a strong likelihood that Lake-Geauga will prevail on the merits of its claim that Defendants have violated the ADA by failing to grant Lake-Geauga the requested reasonable accommodation. This factor weighs heavily in favor of granting Lake-Geauga the requested injunction.

      **e.      Defendants have violated Section 504 of the Rehabilitation Act.**

The Rehabilitation Act prohibits "programs"[7] receiving federal funds from excluding, denying benefits to, or otherwise discriminating against qualified individuals on the basis of their disabilities. 29 U.S.C. §794(a); 24 C.F.R. § 8.4(a). Lake-Geauga is associated with and/or attempting to provide housing and services to qualified individuals with disabilities or handicaps, as defined in 24 C.F.R. § 8.3. Munson Township is the recipient of federal funding within the meaning of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794. Specifically, Munson Township has received federal funds as a sub-recipient of Federal Grant No. 19(H)EPA-10 / MUNSON-FD31919 provided by the Environmental Protection Agency to the State of Ohio. Lake-Geauga believes that Munson Township receives other federal funds, either as a recipient

---

[7] Pursuant to 29 U.S.C. §794(b)(1)(A) "Program or activity" "means all of the operations of a department, agency, special purpose district, or other instrumentality of a State or of a local government" Therefore, Munson Township is prohibited from subjecting an otherwise qualified individual with a disability to discrimination.

or sub-recipient of certain federal grants which prohibit it from engaging in discrimination against qualified individuals.

In order to prevail under the Rehabilitation Act, Lake-Geauga must show that: (1) The plaintiff is a "handicapped person" under the Act; (2) The plaintiff is "otherwise qualified" for participation in the program; (3) The plaintiff is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely by reason of his handicap; and (4) The relevant program or activity is receiving Federal financial assistance. *Doherty v. S. Coll. of Optometry*, 862 F.2d 570, 573 (6th Cir. 1988).

ADA Title II's enforcement provision extended relief to "any person alleging discrimination on basis of disability," and Rehabilitation Act's enforcement provision extended its remedies to "any person aggrieved" by discrimination of person on basis of disability. 29 U.S.C §794a(a)(2); *Popovich v. Cuyahoga County Court of Common Pleas, Domestic Relations Div.,* 150 Fed. Appx. 424 (6th Cir. 2005); *MX Group, Inc., v. City of Covington*, 293 F.3d 326 (6th Cir. 2002). Lake-Geauga and FHRC therefore have standing to bring a §504 claim. *See Innovative Health Systems v. City of White Plains*, 117 F.3d 37, 45 (2d Cir. 1997)

Further, Courts have recognized that a zoning decision constitutes a service, program, or activity of a public entity within the meaning of the ADA and the Rehabilitation Act. *Johnson v. City of Saline*, 151 F.3d 564 (6th Cir. 1998) (interpreting Title II of the ADA to include "*all of the activities of a public entity*" and explaining that Discrimination by a public entity against a qualified individual "must relate to services, programs, or activities," a definition that we have understood to "encompass virtually everything that a public entity does," while noting that it is nevertheless "subject ... to the bounds of reasonableness,"); *e.g. Kennedy v. Fitzgerald*, 102 F.Supp.2d 100 (N.D.N.Y. 2000). A broad reading of "programs, services, and activities" is

consistent with the broad definition used in both Title II ADA cases and § 504 of the Rehabilitation Act. Since it is well-settled that a court's analysis of a Title II ADA claims and § 504 claims roughly parallel each other because the statutes contain similar language and are "quite similar in purpose and scope", Defendants are discriminating against Lake-Geauga, FHRC, and their residents because of their disabilities in violation of § 504 by:

a.  Discriminating against persons with disabilities by denying Lake-Geauga's requested zoning variance and refusing to make reasonable accommodations or modifications to its zoning regulations, in violation of 29 U.S.C. § 794(a);

b.  Failing to make a reasonable accommodation or modification in its policies and practices when necessary to avoid discrimination, in violation of 29 U.S.C. § 794(a);

c.  Denying housing to the potential residents of Twelve Meadows because they are persons with disabilities, in violation of 24 C.F.R. § 8.4(a) and (b)(1)(vii);

d.  Utilizing zoning requirements that are not imposed upon other groups of related or unrelated non-disabled persons in a manner that denies the prospective residents of Twelve Meadows an equal opportunity to benefit from the housing, aid, benefits, or services of Munson Township, in violation of 24 C.F.R. § 8.4(b)(1)(ii);

e.  Denying housing to Twelve Meadows because the prospective residents of its residential care home are persons with disabilities, in violation of 24 C.F.R. § 8.4(b)(1)(vii);

f.  Limiting the prospective residents of Twelve Meadows in the enjoyment of rights, privileges, advantages, or opportunities enjoyed by others receiving the housing, aid, benefit, or services of Munson Township, in violation of 24 C.F.R. § 8.4(b)(1)(viii);

g.  Denying the prospective residents of Twelve Meadows an opportunity to participate in a program in the most integrated setting appropriate to their needs, in violation of 24 C.F.R. § 8.4(d); and

h.  Intimidating or interfering with Plaintiffs' potential residents' rights secured under the Rehabilitation Act, in violation of 28 C.F.R. § 42.503.

There is a strong likelihood that Plaintiffs will prevail on the merits of their claims under Section 504. As such, this element weighs heavily in favor of granting the requested preliminary injunction.

      **f.**      **Defendants have engaged in unlawful discriminatory practices in violation of Section 4112.02(H) of the Ohio Revised Code.**

Section 4112.02(H) of the Ohio Revised Code provides that it is an "unlawful discriminatory practice…for any person to…refuse to make reasonable accommodations in rules, policies, practices, or services when necessary to afford a person with a disability equal opportunity to use and enjoy a dwelling unit including associated public and common use areas."

"Disability", as used in Chapter 4112, means "a physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; a record of a physical or mental impairment, or being regarded as having a physical or mental impairment." R.C. §4112.01(A)(15). As a general matter, Ohio courts look to federal regulations and case law to interpret the ADA, 42 U.S.C. §§12101-12203. *City of Columbus Civil Serv. Comm'n v. McGlone*, 82 Ohio St.3d 569, 571-572 (1998). Under Ohio law, drug or alcohol addiction is a "physical or mental impairment" which qualifies as a disability. R.C. §§4112.01(A)(13), 4112.01(A)(16)(a)(iii).

Here, it cannot be disputed that Defendants refused to provide Lake-Geauga with a reasonable accommodation to the Zoning Resolution to allow Lake-Geauga to have five (5) unrelated, "disabled" (as that term is used in Chapter 4112) persons to reside at Twelve Meadows. The requested reasonable accommodation was necessary to afford persons with a disability equal opportunity to use and enjoy Twelve Meadows. Defendants' actions and omissions in violation of R.C. §4112.02(H) caused injuries to Lake-Geauga.

There is a strong likelihood that Lake-Geauga will prevail on the merits of its claims under R.C. §4112.02(H). This element weighs heavily in favor of granting the requested preliminary injunction.

### 2. Absent a preliminary injunction, Plaintiffs will suffer irreparable harm.

In housing discrimination and civil rights cases like the case *sub judice*, irreparable injury is presumed once a plaintiff shows a likelihood of success on the merits. *Jordan v. Greater Dayton Premier Management*, 9F.Supp.3d 847, 861-862 (S.D. Ohio 2014) citing to *Gresham v. Windrush Partners, Ltd.,* 730 F.2d 1417, 1423 (11th Cir.1984) (when "housing discrimination is shown, 'it is reasonable to presume that irreparable injury flows from the discrimination").; *Rogers v. Windmill Pointe Village Club Ass'n,* 967 F.2d 525, 528–29 (11th Cir.1992); *Cousins v. Bray,* 297 F.Supp.2d 1027, 1041 (S.D.Ohio 2003) ("Because the Fair Housing Act provides that equitable relief is available where there is a violation of the statute, 42 U.S.C. § 3613(c)(1), the traditional showing of irreparable harm is not required in order to grant a preliminary injunction in a Fair Housing Act case."); *Forest City Daly Housing, Inc. v. Town of North Hempstead*, 175 F.3d 144, 153 (2d Cir. 1999) ("[W]here a plaintiff demonstrates a likelihood of success on the merits of a fair housing claim, irreparable harm may be presumed.") (citations omitted); *Gresham v. Windrush Partners, Ltd.*, 730 F.2d 1417, 1423 (11th Cir. 1984) ("We agree with the district court that irreparable injury may be presumed from the fact of discrimination and violations of fair housing statutes."); *North Shore-Chicago Rehabilitation, Inc. v. Village of Skokie*, 827 F. Supp. 497, 509 (N.D. Ill. 1993) ("Where a plaintiff has shown a likelihood of success in proving a violation of the Fair Housing Act, irreparable injury is presumed).

Furthermore, where a statute specifically provides for the grant of injunctive relief, irreparable injury need not be shown. *Jordan*, 9 F. Supp.3d at 862 ("where the plaintiff seeks an injunction to prevent the violation of a federal statute that specifically provides for injunctive relief, [she] need not show irreparable harm.") (citing to *Illinois Bell Tel. Co. v. Illinois Commerce Comm'n,* 740 F.2d 566, 571 (7th Cir.1984)); *Stewart B. McKinney Found., Inc. v. Town Plan & Zoning Comm'n of Town of Fairfield*, 790 F. Supp. 1197, 1208 (D. Conn. 1992)("[I]rreparable harm may be presumed in this case because ... the plaintiff has presented sufficient evidence to establish that its rights under the [Fair Housing] Act have been violated.").

The FHA specifically provides for injunctive relief. 42 U.S.C. §3613(c)(1). Similarly, the ADA and Section 504 incorporate remedial statutes that include injunctive relief. The ADA imports a remedy originally established for Civil Rights Act violations and allows for injunctive relief. 42 U.S.C. §12188(a); 42 U.S.C. §2000a-3(a). The Rehabilitation Act similarly provides for injunctive relief when intentional discrimination occurs. 29 U.S.C. § 794a; 42 U.S.C. § 2000e-5(g)(1). An act is intentional for the purposes of this remedy when it is "not accidental, inadvertent, or heedless." *Kennerly v. ARO, Inc.*, 447 F. Supp. 1090, 1100 (E.D. Tenn. 1977) (citing *Waters v. Wisconsin Steel Works of International Harvester Co.*, 502 F.2d 1309 (7th Cir. 1974)).

Because all three federal statutes allow for injunctive relief in this case, a presumption of irreparable harm is appropriate.

Furthermore, as the Sixth Circuit noted in *United States v. Edward Rose & Sons, et al.*, a court must, in deciding a motion for preliminary injunction, "balance the equitable factors, and none is a prerequisite." 384 F.3d 258, 264 (6th Cir. 2004) (citing *Washington v. Reno*, 35 F.3d 1093, 1099 (6th Cir. 1994)). Thus, according to the Sixth Circuit, in a housing discrimination

case, a demonstration of irreparable harm is not required if "[t]he other equitable factors, particularly the strong likelihood of success on the merits, outweigh any lack of irreparable harm, with or without any presumption." *Id.*

Although Lake-Geauga is entitled to this legal presumption of irreparable harm because of the invidiousness of housing discrimination, it will very likely experience actual irreparable harm in the absence of a preliminary injunction. Not only will Lake-Geauga be unable to provide Level II Recovery Housing to persons in Lake and Geauga counties, but, the entity itself will lose a grant from OMHAS in the amount of $334,561 which is necessary for Lake-Geauga to acquire and operate Twelve Meadows. Without those funds, Lake-Geauga cannot reimburse its acquisition costs and/or operate Twelve Meadows, the Level II Recovery House shortage in Geauga County will persist, and persons with alcohol and drug addiction will be deprived of the ability to live in Munson Township's R-1 District.

Loss of housing is an irreparable injury incapable of being adequately compensated because a person who loses housing "cannot remain in limbo while the court resolves the matter. He or she must find housing elsewhere, and once that housing is found . . . it becomes difficult to disrupt new friendships and other community ties by uprooting oneself again." *Chapp v. Bowman*, 750 F. Supp. 274, 277 (W.D. Mich. 1990). Harm of this nature is certainly irreparable. *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002) (A plaintiff's harm from the denial of a preliminary injunction is irreparable if "it is not fully compensable by monetary damages.").

In this case, Lake-Geauga's presumption of irreparable injury is buttressed by real, actual irreparable injuries in the loss of grant funding necessary to fulfill its mission of serving a population of persons with alcohol and drug addiction and the actual loss of housing options to

those people and the injuries resulting therefrom. This factor weighs heavily in favor of granting the requested injunction.

3.      **There will be no substantial harm to others from granting this preliminary injunction.**

Granting this Preliminary Injunction will not cause substantial harm to others. It causes no harm to Defendants if this Court compels them to follow established federal law. Moreover, any potential harm to Defendants is not only less than the likely harm to Lake-Geauga and the prospective residents of Twelve Meadows while this Court considers the merits of its claims, it is significantly outweighed by the serious harm of discrimination and loss of housing Lake-Geauga and its potential residents face if Defendants are not enjoined from failing to accommodate the disabilities of the potential tenants of Lake-Geauga.

Therefore, the harm faced by Lake-Geauga if the preliminary injunction is denied far outweighs any harm that Defendants may suffer if the preliminary injunction is granted.

4.      **The public interest is served by granting the preliminary injunction.**

Courts in the Sixth Circuit have repeatedly noted that "there is a significant public interest in eliminating discrimination against individuals with disabilities." *Deck v. City of Toledo*, 29 F. Supp. 2d 431, 434 (N.D. Ohio 1998) (citing *Thomas By and Through Thomas v. Davidson Academy*, 846 F.Supp. 611, 619 (M.D. Tenn.1994)). Compliance with the laws of this state is also unquestionably in the public interest. *Adams v. Ohio Dept. of Health*, 356 N.E.2d 324, 329 (Ohio Com.Pl. 1976). In issuing the requested relief, this Court will serve the public interest "by vindication of [legislative] policies" embodied in federal law. *Planned Parenthood Affiliates of Ohio v. Rhodes*, 477 F. Supp. 529, 541 (S.D. Ohio 1979). This is not a case of competing public interests. There is no public interest served by allowing Defendants to continue to violate the FHA, the ADA, Section 504, and Chapter 4112 of the Ohio Revised Code. On the

contrary, the public interest will be served by granting the injunctive relief Lake-Geauga and FHRC now seek.

## IV.     CONCLUSION

The balancing of the four factors for issuing a preliminary injunction weighs heavily in Plaintiffs' favor. Therefore, pursuant to Rule 65(a) of the Federal Rules of Civil Procedure, Plaintiffs Lake-Geauga and FHRC respectfully request that, based on the within motion, the Court hold a hearing on Lake-Geauga's application for preliminary injunction at the earliest possible time and that, after the hearing, Defendants be preliminarily enjoined from continuing to engage in the illegal conduct described above and in the Complaint and be directed to remedy the effects of their illegal, discriminatory conduct. Such affirmative relief should include, but not necessarily be limited to, the elimination of any and all policies and rules prohibiting Lake-Geauga from opening and/or operating a sober living home at 12700 Ravenna Road, Munson Township, Ohio ("Twelve Meadows") or elsewhere in Munson Township.

Respectfully submitted,

/s/ Benjamin Grant Chojnacki
R. Todd Hunt (Reg. No. 0008951)
  Email: rthunt@walterhav.com
  Direct Dial: 216-928-2935
Benjamin Grant Chojnacki (Reg. No. 0087401)
  Email: bchojnacki@walterhav.com
  Direct Dial: 216-619-7850

WALTER | HAVERFIELD LLP
1301 East Ninth Street, Suite 3500
Cleveland, Ohio 44114-1821

and

James M. Gillette (Reg. No. 0015995)
  117 South Street, Suite 208
  Chardon, OH 44024

Email: jim@jamesgillettelaw.com
Telephone: 440-286-7195

and

Stephen M. Dane (Reg. No. 0013057)
DANE LAW LLC
312 Louisiana Ave.
Perrysburg, OH 43551
Telephone: (419) 873-1814
Email: sdane@fairhousinglaw.com

*Attorneys for Plaintiffs*
*Lake-Geauga Recovery, Centers, Inc. and*
*Fair Housing Resource Center, Inc.*


<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing Plaintiffs' Joint Motion for Preliminary Injunction with Incorporated Memorandum In Support was served electronically this 21st day of December, 2020. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.


/s/ Benjamin Grant Chojnacki
One of the Attorneys for Defendant