| | | |
|---|---|---|
| LAKE-GEAUGA RECOVERY CENTERS, INC., et al., | ) ) ) | CASE NO.: 1:20-CV-02405 |
| | ) | JUDGE: J. PHILIP CALABRESE |
| Plaintiffs, | ) ) | **DEFENDANTS' BRIEF IN OPPOSITION** |
| vs. | ) ) | **TO PLAINTIFFS' JOINT MOTION FOR** |
| | ) | **PRELIMINARY INJUNCTION** |
| MUNSON TOWNSHIP, et al., | ) ) | |
| Defendants. | ) | |

Now come Defendants, Munson Township, Dennis Pilawa, Danielle Pitcock, Don Alexander, Joe Tomaric, Jim O'Neill and James Herringshaw, by and through counsel Mazanec, Raskin & Ryder Co., L.P.A., and hereby submit the following Memorandum in Opposition to Plaintiffs' Joint Motion for Preliminary Injunction.

MAZANEC, RASKIN & RYDER CO., L.P.A.

*s/Amily A. Imbrogno*
DAVID M. SMITH (0079400)
AMILY A. IMBROGNO (0092434)
100 Franklin's Row
34305 Solon Road
Cleveland, OH 44139
(440) 248-7906
(440) 248-8861 – Fax
Email:   dsmith@mrrlaw.com
            aimbrogno@mrrlaw.com

*Counsel for Defendants Munson Township, Dennis Pilawa, Danielle Pitcock, Don Alexander, Joe Tomaric, Jim O'Neill and James Herringshaw*

# TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................................1

II.  FACTUAL BACKGROUND .................................................................................2

III. LEGAL ANALYSIS.................................................................................................9

    A.   Standard of Review.......................................................................................9

    B.   Plaintiffs cannot prevail on the merits of their claims. ..........................10

        1.   Plaintiffs cannot prevail on their claims that Defendants engaged in disability discrimination under either the Fair Housing Act, the Americans with Disabilities Act, or Section 504 of the Rehabilitation Act. ................................................................... 10

        2.   Plaintiffs cannot prevail on their claims that Defendants unlawfully refused them a reasonable accommodation under the Fair Housing Act, the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, or R.C. § 4112.02(H). ................................................ 15

        3.   Plaintiffs cannot prevail on their claim that any Defendant "intimidated or interfered with Plaintiffs' potential residents' rights secured under the Rehabilitation Act." ................................................... 17

    C.   Plaintiffs will not suffer injury absent an injunction. ...........................20

    D.   Issuance of a preliminary injunction would cause substantial harm to others and would harm the public interest.....................................................24

IV.  CONCLUSION.......................................................................................................25

# TABLE OF AUTHORITIES

**Cases**

Ability Center of Greater Toledo v. City of Sandusky, 385 F.3d 901 (6th Cir. 2004) ................ 18

Anderson v. City of Blue Ash, 798 F.3d 338, 356–57, 364 (6th Cir. 2015) ................................ 12

Bazzy Investments v. City of Dearborn, No. 16-10879, 2018 WL 10962765 ............................ 24

Bell v. Johnson, 308 F.3d 594 (6rh Cir. 2002) ......................................................................... 19

Bloch v. Ribar, 156 F.3d 673 (6th Cir. 1998) ........................................................................... 19

Chapp v. Bowman, 750 F. Supp. 274 (W.D. Mich. 1990) ........................................................ 21

Fair Housing Opportunities of Northwest Ohio v. American Family Mut. Ins. Co., 684
   F.Supp.2d 964 (N.D. Ohio 2010) ...................................................................................... 15

Fritz v. Charter Township of Comstock, 592 F.3d 718 (6th Cir. 2010) ...................................... 19

Get Back Up, Inc. v. City of Detroit, 725 F.App'x 389 (6th Cir. 2018) ........................... 10, 12, 13

Get Back Up., Inc. v. City of Detroit, No. 11-13909, 2013 WL 3305672 (ED Mich. Jul 1,
   2013) ................................................................................................................................ 11

Graoch Assocs. # 33, L.P. v. Louisville/Jefferson Metro Human Relations Comm'n, 508
   F.3d 366, 377 (6th Cir.2007) ........................................................................................ 10, 14

Hamm v. City of Gahanna, Ohio, 109 F.App'x 744 (6th Cir. 2004) .......................................... 15

Harding v. City of Toledo, 433 F.Supp.2d 867 (ND Oh. 2006) ...................................... 22, 23, 24

Howard v. City of Beavercreek, 276 F.3d 802 (6th Cir. 2002) ............................................. 16, 17

In re DeLorean Motor Co., 755 F.2d 1223, 1228 (6th Cir. 1985) ......................................... 10, 21

Isabel v. City of Memphis, 404 F.3d 404 (6th  Cir. 2005) ......................................................... 15

Johnson v. U.S. Dep't of Health and Human Servs., 30 F.3d 45 (6th Cir.1994) ........................ 15

Larkin v. State of Mich. Dept. of Social Servs., 89 F.3d 285 (6th Cir. 1996) ............................ 11

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) ....................................................... 12

McPherson v. Michigan High School Ath. Ass'n., 119 F.3d 453 (6th Cir. 1997) ................. 10, 18

Michigan Flyer LLC v. Wayne Cnty. Airport Auth., 860 F.3d 425 (6th Cir. 2017) .................. 18

Monette v. Electronic Data Systems Corp., 90 F.3d 1173, n. 5 (6th Cir. 1996) .......................... 10

Moore v. Shelby Cnty., 369 F.Supp.3d 802 (ED Ky. 2019) ...................................................... 19

Nat'l Viatical Inc. v. Universal Settlements Int'l, 716 F.3d 952 (6th Cir. 2013) ........................ 23

Nexus Gas Trans., LLC v. City of Green, Ohio, 757 F.App'x 489 (6th Cir. 2018) .................... 10

Planet Aid v. Ypsilanti Tp., 26 F.Supp.3d 683 (ED Mich. 2014) ............................................. 24

Raytheon Co. v. Hernandez, 540 US 44 (2003) ....................................................................... 11

S. Glazer's Distributors of Ohio, LLC, 860 F.3d 844, 849 (6th Cir. 2017) ............................. 9, 10

Smith & Lee Assocs, v. Taylor Michigan, 102 F.3d 781, 790 (6th Cir. 1996) ..................... 12, 16

Thaddeus-X v. Blatter, 175 F.3d 378 (6th Cir. 1999) .......................................................... 19, 20

Tri-Township Ambulance Serv. V. NE Mich. Med. Control Auth, No. 08-14622-BC, 2007
   WL 4793344 ..................................................................................................................... 23

Turner v. City of Englewood, 195 F.App'x. 346 (6th Cir. 2006) .......................................... 12, 18

US v. Edward Rose Sons, 384 F.3d 258 (6th Cir. 2004) ........................................................... 21

Vance v. City of Maumee, 960 F.Supp.2d 720 (ND Oh. 2013) ................................................. 19

Vereecke v. Huron Valley Sch. Dist., 609 F.3d 392 (6th Cir. 2010) .......................................... 20

Wallender v. Canadian Nat'l Railway Co., No. 2:13-cv-2603, 2015 WL 10818741 ............. 14, 20

Wilson v. Williams, 961 F.3d 829 (6th Cir. 2020) ................................................................... 24

## **LOCAL RULE 7.1(f) CERTIFICATION**

Defendants certify that this memorandum adheres to the page limitation specifications of Local Rule 7.1(f) of the US District Court of the Northern District of Ohio.

<u>**BRIEF IN OPPOSITION**</u>

## I.  INTRODUCTION

In September 2019, Plaintiff Lake-Geauga Recovery Centers, Inc. (hereinafter "LGRC") purchased a single-family residence in the R-1 zoning district of Munson Township (hereinafter the "Residence.") Plaintiff LGRC alleges that it bought the residence with the intent that it serve as a "Level II Recovery House" for five adults recovering from drug or alcohol dependency. Despite this allegation, before purchasing the residence, LGRC did not ensure that such purpose was permitted by the Munson Township zoning resolution – its CEO claims that she believed that the residence was located within the City of Chardon, which does permit five unrelated adults to live in one residence within its R-1 zoning district.

It turned out that the Munson Township Zoning Resolution does not allow for five unrelated adults to live in a single-family residence in the R-1 zoning district; the number of unrelated adults living in one single-family residence is limited to two, no matter what the adults' disability status.  All Defendants in this case have acted in accordance with that limitation, and have applied the zoning resolution to LGRC as well as other non-party entities fairly and to the best of their abilities. None of them harbor or have displayed any discriminatory animus to Plaintiffs or disabled individuals – those recovering from drug or alcohol addiction, specifically.

Nevertheless, Plaintiffs allege the following theories of recovery against Defendants:

- Disability discrimination;

- Failure to make a reasonable accommodation; and,

- Intimidating, threatening, or interfering with any person in the exercise or enjoyment of, or having aided or encouraged any person in the exercise or enjoyment of any right granted or prosecuted by law.

Plaintiffs allege each of these three theories under the Fair Housing Act, the Americans with Disabilities Act, and the Rehabilitation Act. They also allege the failure to make a reasonable accommodation claim under Chapter 4112 of the Ohio Revised Code.

All of these claims will fail. The Munson Township Zoning Resolution is not discriminatory on its face, and there is no evidence that it has ever been applied in a discriminatory manner. None of the Defendants are now required to "accommodate" LGRC's mistake of purchasing property without first checking applicable zoning codes, and no Defendant threatened, intimidated, or interfered with any Plaintiff's exercise or enjoyment of rights. In fact, upon information and belief, the Residence is currently occupied by two of LGRC's clients recovering from addiction, as well as an LGRC property manager, who has also recovered from addiction. None of the Defendants have intimidated, retaliated against, or threatened any of the residents whatsoever. Therefore, Plaintiffs' claims for relief can only be based on the fact that they wish to operate the Residence with a house manager plus <u>five</u> occupants instead of <u>two</u>.

As such, the reason Plaintiffs are making their unfounded allegations is merely because LGRC claims that the two-adult limit imposes financial strain upon it. Furthermore, it represented in its grant application that it would house five persons recovering from drug or alcohol dependency. If it does not operate as represented in its application, it will not receive the grant funds. However, a group of five persons is not a protected class under the law simply by virtue of number of persons included in the group, and Plaintiffs cannot succeed on the merits of their claims. Their Motion for Preliminary Injunction must be denied.

## II. FACTUAL BACKGROUND

The Munson Township Zoning Resolution provides that homes located in the area zoned residential one-family (R-1) may be used only as single-family dwellings, places of worship,

public structures, licensed residential facilities, or certain types of day-care facilities. (Relevant portions of Munson Township Zoning Resolution, attached hereto as Exhibit "A", Section 401[1]).

A "family" is defined by the resolution as

> "one (1) or more persons related by blood, adoption, guardianship or marriage, living and cooking together as a single housekeeping unit, exclusive of live-in hired employees. A number of adult persons not exceeding two (2) living and cooking together as a single housekeeping unit though not related by blood, adoption, guardianship or marriage shall also be deemed to constitute a family, exclusive of live-in hired employees. A family shall not include any society, club, fraternity, sorority, association, lodge, federation, coterie, or a like organization; any group of individuals whose association is temporary or seasonal in nature; and any group of individuals who are in a group living arrangement as a result of criminal offenses."

(*Id.*, Section 202). Therefore, homes used as single family dwellings within the R-1 district may only be occupied by two or less unrelated adult persons, exclusive of any live-in hired employees.

Despite this limitation, Plaintiff LGRC purchased a single-family home located at 12700 Ravenna Road in Munson Township to serve as the "Twelve Meadows" recovery house (hereinafter the "Residence"). (Transcript of 7.29.2020 Bd. of Zoning Appeals hearing, attached hereto as Exhibit "B", pp. 39, 52).

In September and October 2019, Munson Township Zoning Inspector Jim Herringshaw received calls from residents who were concerned about their property values because they noticed that the property at 12700 Ravenna Road had been sold to LGRC. (Declaration of James Herringshaw, attached hereto as Exhibit C, ¶ 3). He also received a visit from the Township Fire Chief, who expressed concerns that a change of use could render the Residence outside compliance with the fire code. (*Id.* at ¶ 4). Because the Munson Township Zoning Resolution requires a landowner to obtain a zoning certificate if he or she is going to change the use of a property, Mr.

---

[1] Exhibit A contains a version of the zoning resolution as it existed prior to March 2020. The zoning resolution has changed twice since March 2020, but none of the changes are relevant to the instant Motion.

3

Herringshaw sent LGRC a letter indicating that it must apply for a zoning certificate if it intended to change the use of the 12700 Ravenna Road home. (Exhibit A, Section 1201; Exhibit C, ¶ 5).

Thereafter, on November 1, 2019 Mr. Herringshaw received a call from Melanie Blasko, CEO and President of LGRC, regarding the letter. (Exhibit C, ¶ 6). Mr. Herringshaw told Blasko that licensed residential facilities are a permitted use in areas zoned R-1, but LGRC must still apply for a zoning certificate if it intended to change the use of the property to a licensed residential facility. (*Id.* at ¶ 7). Blasko stated that she did not think that the Residence was considered a licensed facility, and claimed that she thought the home was located in the City of Chardon, which allows for five unrelated persons to live in homes located in areas zoned as R-1. (*Id.*) During this conversation, Blasko told Mr. Herringshaw that the fact that the proposed use of the home involved a protected class trumped the zoning resolution. (*Id.*) Mr. Herringshaw told Blasko that he would submit the issue to the Assistant County Prosecutor for a legal opinion on the issue. (*Id.*)

On December 23, 2019, Blasko requested to submit a variance request. (*Id.* at ¶ 8). Mr. Herringshaw cautioned her that he had not yet received an opinion from the prosecutor's office on the issue, and it had not yet been determined exactly what steps Lake-Geauga Recovery Centers, Inc. would need to take in order to use the property at 12700 Ravenna Road to house five unrelated adults, but Blasko wanted to submit the request in time for it to be heard at the January 2020 Board of Zoning Appeals meeting. (*Id.*) Mr. Herringshaw told Blasko that she had the option to apply for a zoning certificate and that she also had the option to apply for a variance; he did not instruct that she was required to do so, or to do so at that exact moment, but instead, he was providing her with options. (*Id.*) Blasko submitted an application for a zoning certificate to change the use of the house to a "Level II Recovery Center," which is not a licensed facility. (Exhibit C, ¶¶ 9, 10, Zoning Certificate Application).

While it is true that the application did not specifically request information regarding the number of persons who would reside in the Residence, the paperwork Blasko submitted with the application for Zoning Certificate indicated that the Residence would be used to house five adults. (Exhibit C, ¶ 10). A house occupied by five unrelated adults does not meet the definition of "single family dwelling" as provided by the Munson Township Zoning Resolution. (Exhibit A, Section 202).

Because the proposed use of the home did not involve a "single family dwelling" or other use as permitted by the zoning resolution, it was not a permitted use in the R-1 district. (*Id.*, Section 401). Under the zoning resolution, "no zoning certificate shall be issued unless the plans for the proposed building or structure or use of land fully comply with the provisions of this Resolution, unless the Zoning Inspector receives a written order from the Board of Zoning Appeals deciding an appeal, a variance or conditional use." (*Id.*, Section 1201).

As the Zoning Inspector, Mr. Herringshaw was required by the zoning resolution to review all applications for Zoning Certificates to insure that they conform to all applicable provisions of the zoning resolution (*Id.*, Section 1101.1). Therefore, because the proposed use did not conform with the zoning resolution, as a recovery house occupied by five unrelated adults was not a permitted use in the R-1 district, Mr. Herringshaw was required to deny the application, and he did so. (Exhibit C, ¶ 11).

Under the zoning resolution, LGRC could have appealed the decision to the Board of Zoning Appeals within twenty days. (Exhibit A, Section 1202.1).[2] To do so, it was required to file

---

[2] Despite the fact that LGRC never appealed this decision in accordance with the zoning resolution, at the hearing on the variance request, counsel for LGRC attempted to place the issue of the denial of the Zoning Certificate before the Board. (Exhibit B, pp. 18-19). The Board reminded counsel for LGRC that the only issue that had properly been brought before the Board under the procedures prescribed by the zoning resolution was the issue of the variance request, and that the Board did not have the authority to determine what constitutes a "family." While it is true that the variance request form contains the words "notice of appeal" at the top, nowhere within the variance request did LGRC request the Board to review the denial of the Zoning Certificate.

with Mr. Herringshaw and the Board of Zoning Appeals a notice of appeal specifying the grounds for the appeal and containing specific language. (*Id.*). However, LGRC did not appeal the denial of the Zoning Certificate, and none of the Defendants stopped it from doing so. Mr. Herringshaw did not deny the application because of the potential residents' disability status, and there is no evidence suggesting that he did. (Exhibit C, ¶ 11).

At the same time it applied for the zoning certificate, Blasko filed a variance request, for a use variance to allow a "Level II Recovery House" as a permitted use. (*Id.* at ¶ 12, Variance Request). Again, Mr. Herringshaw provided this form to Blasko as an option; he did not instruct that she was required to do so, or to do so at that exact moment. (*Id.* at ¶ 13). The matter was set for a public hearing, not for the purpose of embarrassing LGRC, but because the zoning resolution requires variance requests to be set for hearing. (Exhibit A, Section 1202.5). The hearing did not take place until July 29, 2020 due to LGRC's request for a continuance and then delays caused by the COVID-19 pandemic. (Exhibit C, ¶ 14).

Between the time LGRC filed the variance request and the time public hearing occurred, Mr. Herringshaw received communications from James Gillette, counsel for LGRC outlining LGRC's position that the Township was in violation of federal law and that it needed to make an accommodation for LGRC. (*Id.* at ¶ 15). None of those communications explained why it is necessary for one recovering from drug or alcohol addiction to live in a home with four other individuals recovering from drug or alcohol addiction. (*Id.*) Plaintiffs allege that in response to the communications, the Township "doubled down" and insisted that LGRC needed to obtain a variance, and also stated that the term "family" did not apply to the proposed use because the occupants of the home would be "transient." (Complaint at ¶¶ 77-78).

At no time did the Township instruct LGRC that it needed to obtain a variance or that the proposed use for five adults was not permitted due to the transient nature of the residents. (Exhibit C, ¶ 16). Instead, counsel for LGRC proposed that two residents plus one house manager occupy the residence until the matter was resolved, and Geauga County Assistant Prosecutor Susan Wieland expressed concerns that the arrangement was temporary given the fact that the matter had not been resolved. (*Id.* at ¶ 17). Upon information and belief, two adults recovering from addiction, as well as one house manager, moved into the Residence in February 2020, and have remained there since, absent interference from Defendants.[3] (Exhibit B, pp. 81-82).

LGRC could have withdrawn its application for a variance at any time; however, it did not do so. On July 29, 2020 the hearing on the variance request proceeded in accordance with the procedures outlined in the Munson Township Zoning Resolution. (Exhibit A, Section 1202.6). The zoning resolution requires that any party in interest be permitted to present a position, arguments, and contentions, and to offer evidence and examine and cross-examine witnesses. (*Id.*). In accordance with these requirements, LGRC presented evidence in favor of its case, and several neighbors of the Residence spoke regarding their position on the proposed use. (Exhibit B, pp. 92 – 179).

At the start of the hearing, Dennis Pilawa, the Chair of the BZA, asked that those speaking keep their comments related to issuance of a use variance. (*Id.*, p. 4). He reminded attendees that the Board's authority was limited to considering the legal standards that LGRC was required to meet to obtain a use variance under the zoning resolution, and the hearing would be limited to just address those standards. (*Id.* at 9).

---

[3] Munson Township's position is that the house manager does not qualify as a "live-in employee" because the house manager is not an employee of the residents themselves. Nevertheless, it has accommodated Defendants' request to allow the house manager to live in the Residents with two other occupants, bringing the total of non-related adults living in the Residence to three.

During the hearing, counsel for LGRC repeatedly attempted to request an accommodation and challenge the zoning resolution as discriminatory on its face, but Mr. Pilawa continually reminded everyone, including neighboring residents giving testimony, that they were only there to determine whether LGRC was entitled to a use variance under the zoning resolution. (*Id.* at 28-29, 57, 61-64, 101, 110, 114). None of the Board of Zoning Appeals members expressed any opinion regarding the disability status of the occupants of the Residence. (*Id.*, generally).

Moreover, while Plaintiffs allege that the Board members held illegal private meetings in which they conspired to determine how to deny the variance request, no such meetings occurred and Plaintiffs will not be able to support such allegations with any evidence. (Compl. at 98). Instead, the Board members, in compliance with Ohio sunshine law, held one brief discussion regarding whether LGRC had met the requisite conditions for a variance under the zoning resolution.

The zoning resolution requires the following conditions be met before an applicant may be awarded a use variance:

- The variance requested stems from a condition which is unique to the property at issue and not ordinarily found in the same zone or district;

- The hardship condition was not created by actions of the previous landowners, the applicant or agents of the applicant;

- The granting of the variance will not adversely affect the rights of the adjacent Owners;

- The granting of the variance will not adversely affect the public health, safety or general welfare;

- The variance will be consistent with the general spirit and intent of the zoning resolution;

- The variance sought is the minimum which will afford relief to the applicant; and,

- There is no other economically viable use which is permitted in the zoning district.

(Exhibit A, Section 1202.4.1).

The Board of Zoning Appeals found that none of those conditions were met in this case. (Exhibit B, pp. 183-187). As a result, it was required to deny the request for variance, as provided by the Munson Township Zoning Resolution. (Exhibit A, Section 1202.4.1). The resolution does not provide that the Board has the power to grant an accommodation outside the confines of the resolution itself.[4] (*Id.*)

Plaintiffs can provide no evidence that any member of the Board of Zoning Appeals harbored any animus to LGRC's clients based on disability status.[5] Actually, the Board of Zoning Appeals denied a similar request for a variance in 2002 when a group of priests requested a variance to permit four or five unrelated adult priests to live in a residential district. (Munson Township Board of Zoning Appeals Meeting Minutes, September 19, 2002, attached hereto as Exhibit "D"). Nevertheless, an administrative appeal and the instant litigation ensued.

## III. LEGAL ANALYSIS

### A. Standard of Review

A preliminary injunction is an <u>extraordinary and drastic</u> remedy that should only be granted upon a clear showing that a plaintiff is entitled to such relief. *S. Glazer's Distributors of Ohio, LLC*, 860 F.3d 844, 849 (6th Cir. 2017). Courts must weigh the following factors when deciding whether to grant a preliminary injunction: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public

---

[4] Even if the resolution did confer such power on the Board, LGRC was not entitled to the accommodation it seeks, as explained thoroughly below.
[5] At this time, the parties have not had the benefit of discovery, however, the undersigned's investigation into this matter has not revealed any evidence of animus to those with disabilities.

interest would be served by the issuance of an injunction. *Nexus Gas Trans., LLC v. City of Green, Ohio*, 757 F.App'x 489 (6th Cir. 2018). While the Sixth Circuit views these as factors for a court's consideration and not elements that must all be proven, a court need not make specific findings regarding all four factors if fewer are dispositive of the issue. *In re DeLorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985). "The purpose of a preliminary injunction is to preserve the status quo until a trial on the merits." *S. Glazer's*, 860 F.3d at 848-849.

**B.     Plaintiffs cannot prevail on the merits of their claims.**

**1.     Plaintiffs cannot prevail on their claims that Defendants engaged in disability discrimination under either the Fair Housing Act, the Americans with Disabilities Act, or Section 504 of the Rehabilitation Act.**

In their Motion, Plaintiffs list seven allegations that they believe constitute disability discrimination. However, several of these allegations simply are not true and are not based on the law of the Sixth Circuit. This is evidenced by the fact that Plaintiffs have not included any case law in their Motion explaining how courts apply the Fair Housing Act, the Americans with Disabilities Act, or the Rehabilitation Act to disability discrimination claims; instead, Plaintiffs merely recite the statutes themselves.

A plaintiff may establish disability discrimination under the FHA by proving either the existence of disparate treatment or disparate impact. *Graoch Assocs. # 33, L.P. v. Louisville/Jefferson Metro Human Relations Comm'n*, 508 F.3d 366, 377 (6th Cir.2007). The Sixth Circuit applies the FHA's disparate treatment analysis to claims brought under the ADA and Rehabilitation Act, and has hinted that disparate impact claims may apply under those statutes as well, but has never fully examined the issue. *Get Back Up, Inc. v. City of Detroit*, 725 F.App'x 389, 392 (6th Cir. 2018); *McPherson v. Michigan High School Ath. Ass'n.*, 119 F.3d 453, 460 (6th Cir. 1997), citing *Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, n. 5 (6th Cir. 1996),

*see also Raytheon Co. v. Hernandez*, 540 US 44 (2003) (analyzing disparate impact claims brought under the ADA in the employment context). Nevertheless, as explained in full below, Plaintiffs will not be able to show that they are victims of disability discrimination based on either theory.

> **a.** **Plaintiffs' claims cannot succeed on a disparate treatment theory.**

Plaintiffs claim that the zoning resolution's definition of "family" is facially discriminatory because "it does not permit more than two unrelated adult persons with a disability to live together." (Mot. for Prelim. Inj. At 21, 27). This is incorrect, and the zoning resolution is not discriminatory on its face. The zoning resolution does not state that more than two unrelated adults <u>with disabilities</u> cannot live together. Instead, it states that no more than two unrelated adults may live together, and does not mention those with disabilities at all. It is not facially discriminatory as a facially discriminatory action is one that, on its face, imposes specific requirements on a particular group of people. *Larkin v. State of Mich. Dept. of Social Servs.*, 89 F.3d 285 (6th Cir. 1996).

For example, an ordinance imposing regulations specifically on licensed residential facilities is discriminatory on its face (though not necessarily in violation of the law). *Id.* And, while an ordinance restricting a district to use for only the game of golf may deprive the disabled of the benefit of use, it does not discriminate against the disabled specifically, and is therefore not discriminatory on its face. Instead, it places the disabled in the same group as non-disabled persons based on a neutral distinction between recreational and non-recreational use. *Get Back Up., Inc. v. City of Detroit*, No. 11-13909, 2013 WL 3305672 (ED Mich. Jul 1, 2013).

The Munson Township Zoning Resolution definition of "family" excludes groups of three or more disabled or non-disabled adults, placing the disabled in the same group as the non-disabled. The only groups of people implicated by the definition of "family" are groups of "three

or more unrelated adults," and a group of "three unrelated adults" is not a protected class under any law. Therefore, any heightened scrutiny applicable to facially discriminatory ordinances, such as the one articulated in *Larkin*, does not apply here.

Turning to disparate impact claims challenging non- facially discriminatory laws under the FHA, the ADA, and the Rehabilitation Act, the burden-shifting analysis set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) applies. *Get Back Up, Inc.,* 725 F.App'x at 392, citing *Anderson v. City of Blue Ash*, 798 F.3d 338, 356–57, 364 (6th Cir. 2015). Under this framework, a plaintiff bears the initial burden of making a prima facie case of discrimination. *Get Back Up, supra*. To do so, the plaintiff must present evidence showing that the City's decision-makers took a specific action because they harbored animus toward those with disabilities, or that they factored their constituents' animus toward recovering addicts into their decision. *Id.* (quoting *Turner v. City of Englewood*, 195 F.App'x. 346, 353 (6th Cir. 2006).

If the plaintiff makes its prima facie case, the burden then shifts to the defendant to show that it would have made the same decision even if not motivated by an unlawful purpose. *Smith & Lee Assocs, v. Taylor Michigan,* 102 F.3d 781, 790 (6th Cir. 1996). And if the defendant does so, the plaintiff must show that those reasons were pretextual. *Get Back Up, Inc.,* 725 F.App'x at 392.

Moreover, if a zoning ordinance existed before a dispute began, the ordinance itself can only serve as the basis of a discrimination claim if it was passed specifically to exclude disabled residents from single-family areas, or if the municipality interpreted the existing ordinance in a manner that suggests discriminatory animus. *Smith & Lee Assocs.* 102 F.3d at790.

Here, Plaintiffs have not alleged that the zoning resolution was passed specifically to exclude disabled residents from the single-family areas, nor is there any evidence of such intent. Instead, they allege that Defendants interpreted the ordinance in a discriminatory manner, or that

Defendants' actions themselves were discriminatory. However, as explained in the Factual Background section, each of the Defendants' actions were taken in accordance with the Munson Township Zoning Resolution. All Defendants were merely applying the law as written, and there is no evidence of discriminatory animus on Defendants' part. Additionally, the allegation that Defendants held two illegal meetings in which they discussed how they could deny Plaintiffs' request for a variance is simply not true and cannot supported by any evidence. Plaintiffs' disability status was not a factor in any of the Defendants' actions.

Moreover, while the court in *Get Back Up, Inc.,* 725 F.App'x at 392 did find that a plaintiff established a prima facie case of discrimination when a board of zoning appeals held a hearing at which there was public opposition, that case is different than the instant case. In *Get Back Up*, a board member publicly expressed his or her own discriminatory preferences as they related to the disabled at that hearing. Such did not occur here, and while some neighboring residents of Munson Township did express displeasure with having those recovering from drug and alcohol addiction living in their communities, there is no evidence that any of the Defendants allowed any type of prejudice to affect their decision.

At the conclusion of the hearing, Mr. Pilawa summarized the evidence relating to the variance factors on the record, and none of them had anything to do with the residents' disability status. (Exhibit B, pp. 183-187). Additionally, many residents who spoke at the July 29, 2020 hearing did not even address the disability status of the Residence's occupants; they were concerned with traffic patterns, having businesses operating in their neighborhood, and water drainage issues. (Exhibit B, generally). And, the fact that two individuals recovering from addiction currently reside in the Residence, along with a property manager who has also recovered

from addiction, without any interference from Defendants is evidence that Defendants have not acted with discriminatory intent.

Finally, even if Plaintiffs could establish a prima facie case of disability discrimination, Defendants would still prevail on the merits of their claims because they would have made the same decisions regardless of the potential residents' disability status. All of them were merely applying the Munson Township Zoning Resolution, and addressing LGRC's request for variance, at each step. Moreover, the fact that the Board of Zoning Appeals previously refused to allow five unrelated adult members of the clergy to live in a single-family residence is evidence that it would have made the same decisions absent the potential residents' disability status. *Wallender v. Canadian Nat'l Railway Co.*, No. 2:13-cv-2603, 2015 WL 10818741 *27 (lack of evidence that others similarly situated, who did not engage in protected activity, were not subjected to the same treatment leads to a finding that a defendant would have taken the same action absent the protected activity, and dismissal of retaliation claims). Plaintiffs cannot show that any of the Defendants' decisions were not in accordance with the zoning resolution. Plaintiffs' disparate treatment claims will not succeed on their merits.

### b.     Plaintiffs' claims cannot succeed on a disparate impact theory.

To state a prima facie case of disparate-impact discrimination, a plaintiff must:

(1) identify and challenge a specific housing practice, and then
(2) show that the practice had an adverse effect on members of a protected class by offering statistical evidence of a kind or degree sufficient to show that the practice in question has caused the adverse effect in question.

*Graoch Assocs.,* 508 F.3d at 377.

Here, while Plaintiffs do challenge a specific housing practice, they cannot meet the second element, because "in the Sixth Circuit, relevant statistical analysis is required to make out a prima facie case of disparate impact discrimination*." Fair Housing Opportunities of Northwest Ohio v.*

*American Family Mut. Ins. Co*., 684 F.Supp.2d 964 (N.D. Ohio 2010), citing *Isabel v. City of Memphis*, 404 F.3d 404, 411 (6th Cir. 2005) (a prima facie case is established when plaintiff "through relevant statistical evidence proves that the challenged practice has an adverse impact on a protected group") and *Johnson v. U.S. Dep't of Health and Human Servs*., 30 F.3d 45, 48 (6th Cir.1994) (sustaining district court's dismissal of disparate impact claim because plaintiffs did not provide a "meaningful statistical analysis").

Plaintiffs have not provided any statistical analysis at all, let alone one suggesting that Munson Township's definition of "family" adversely impacts those recovering from alcohol or drug addiction. They have not presented any evidence that those individuals must live in a group setting of five people. Plaintiffs will not succeed on the merits of their disability discrimination claims based on any plausible theory.

> **2. Plaintiffs cannot prevail on their claims that Defendants unlawfully refused them a reasonable accommodation under the Fair Housing Act, the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, or R.C. § 4112.02(H).**

Plaintiffs have essentially claimed that, because LGRC serves the disabled, the Munson Township Zoning Resolution does not apply to it and it is entitled to an accommodation as a matter of right. (Exhibit B, pp. 77-78). However, such is not the state of clearly established law relating to reasonable accommodations; a plaintiff suing for failure to provide a reasonable accommodation must still prove the elements of its claim. Otherwise, the existence of a zoning code becomes meaningless, as anyone in a protected class could purchase property to use for any purpose, no matter where the property is located within a township or municipality.

Courts in the Sixth Circuit apply the same standard to reasonable accommodations claims made under the Fair Housing Act, the Americans with Disabilities Act, the Rehabilitation Act, and R.C. § 4112.02(H). *Hamm v. City of Gahanna, Ohio*, 109 F.App'x 744, 749 (6th Cir. 2004). In

order to prevail on a claim based on failure to give a reasonable accommodation, a plaintiff must prove that "but for the accommodation," the intended residents of the proposed facilities "likely will be denied an equal opportunity" to live in single-family neighborhoods." *Smith & Lee Assocs.* 102 F.3d at 794-795.

Linked to the goal of equal opportunity is the term "necessary." *Howard v. City of Beavercreek*, 276 F.3d 802, 806 (6th Cir. 2002). A plaintiff must show that but for the accommodation, he or she will likely be denied an equal opportunity to enjoy the housing of his or her choice. *Id.* Therefore, in order for Plaintiffs to succeed on the merits in the instant case, they must show that but for allowing them to increase the number of occupants of the Residence from two to five, those recovering from drug or alcohol addiction will likely not be able to live in single-family housing.

For example, in *Smith & Lee Assocs.*, the court found that disabled elderly persons had been denied an equal opportunity to live in single family housing due to a zoning regulation limiting the number of persons to six per home. Elderly disabled people cannot live independently and group homes are the only way that they can continue to live in residential neighborhoods. The facts in *Smith & Lee Assocs.* are completely different from those in the instant case.

Plaintiffs here have not met their burden in showing that those recovering from alcohol or drug addiction may only successfully recover if they reside within a Level II Recovery House, or that they may only successfully recover living with three other occupants as opposed to one other occupant. The only evidence they can present is testimony from LGRC's own CEO, who stated that recovery housing is "critical." (Exhibit B, p. 38).

However, the fact that two individuals who are recovering from drug or alcohol dependency are currently living in the Residence shows that those recovering from addiction can

enjoy single-family housing absent the requested accommodation. *See Howard,* 276 F.3d 802 (the fact that a disabled individual has lived in a home without the requested variance illustrates that the denial of the variance does not deny him or her equal opportunity to enjoy the housing or community of his or her own choice.)

Additionally, Blasko testified at the variance request hearing that there exist options for those recovering from drug or alcohol dependency other than residency in a Level II Recovery house. (Exhibit B, 37-18). Moreover, Plaintiffs have not provided any evidence that an individual recovering from addiction cannot live independently, unlike a disabled elderly person. Finally, to the extent that LCRC needs to offer housing to five individuals as opposed to two in order to receive grant funds, Plaintiffs have not provided any evidence showing that the housing must be located at the specific Residence, or within Munson Township at all.

Increasing the permitted number of occupants in the Residence from two to five is not necessary to allow people recovering from addiction to live in single family neighborhoods.[6] Plaintiffs will not be able to succeed on the merits of their reasonable accommodation claim.

3. **Plaintiffs cannot prevail on their claim that any Defendant "intimidated or interfered with Plaintiffs' potential residents' rights secured under the Rehabilitation Act."**

Plaintiffs allege that Defendants intimidated or interfered with their residents' rights secured under the Rehabilitation Act, in violation of 28 CFR § 42.503.[7] (Mot. for Prelim. Inj. At 10). Claims for intimidation or interference under the Rehabilitation Act fall under 28 CFR § 42.503(b)(vii), which provides that a recipient of federal financial assistance may not "intimidate

---

[6] Munson Township has already provided LGRC an accommodation by allowing a property manager to live on the premises with the two individuals in recovery.
[7] While Plaintiffs' Complaint also alleges intimidation, coercion, and retaliation claims under the FHA and the ADA, Plaintiffs have not asserted in their Motion for Preliminary Injunction that there is a strong likelihood that they will succeed on the merits of those claims, so they are not addressed here.

or retaliate against any individual, whether handicapped or not, for the purpose of interfering with any right secured by section 504."

There exists no Sixth Circuit case law analyzing this provision under the Rehabilitation Act. However, the Sixth Circuit has explained that its "analysis of Rehabilitation Act claims 'roughly parallels' ADA claims because the statutes contain similar language and are 'quite similar in purpose and scope.'" *McPherson,* 119 F.3d at 459-60. Additionally, "the remedies, procedures, and rights available under Title II of the ADA parallel those available under the Rehabilitation Act." *Ability Center of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 905 (6th Cir. 2004). Courts therefore apply case law analyzing the ADA to claims brought under the Rehabilitation Act. *Turner,* 195 F.App'x at 353. Case law analyzing the ADA instructs that Plaintiffs cannot prevail on the merits of their "intimidation" claim.

First, it is well established in the Sixth Circuit that a corporation, like both Plaintiffs in this case, cannot assert a claim for retaliation under the ADA because by its plain language, the ADA provides that no person shall retaliate against an <u>individual</u> for exercising rights secured thereunder.[8] *See* 42 USC § 12203(a); *Michigan Flyer LLC v. Wayne Cnty. Airport Auth.*, 860 F.3d 425, 429 (6th Cir. 2017). Individuals are separate and distinct from corporations. *Id.* Since the Rehabilitation Act also uses the term "individual" in the above-referenced intimidation and retaliation provision, the same principle applies here. Like the plaintiff in *Michigan Flyer LLC*, Plaintiffs will not be able to prevail on this claim simply by virtue of the fact that they are entities that provide services to individuals with disabilities. Plaintiffs will not succeed on the intimidation claim brought under the Rehabilitation Act for this reason alone.

---

[8] See Complaint at ¶¶ 13-14.

Second, case law analyzing intimidation and retaliation claims in the zoning context under the ADA is sparse, but *Vance v. City of Maumee*, 960 F.Supp.2d 720 (ND Oh. 2013) instructs that Plaintiffs cannot prevail on the merits of this claim. The *Vance* court applied the elements of First Amendment retaliation to the case, citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 386-87 (6th Cir. 1999), finding that retaliation claims arising under different sections of federal law are all substantially similar. Pursuant to *Thaddeus-X*, a plaintiff must show that he or she engaged in protected conduct, the defendant took an adverse action against the plaintiff, and the adverse action was taken because of the protected conduct. *Vance*, *supra*.

From the outset, none of the Defendants took any adverse action against Plaintiffs relating to this matter. "'The term 'adverse action' is drawn from employment case law; examples in that context include discharge, demotions, refusal to hire, nonrenewal of contracts, and failure to promote.'" *Thaddeus-X*, 175 F.3d at 396. However, "the courts in this Circuit have had less occasion to analyze…retaliation claims outside of the employment context." *Moore v. Shelby* Cnty., 369 F.Supp.3d 802, 808 (ED Ky. 2019). For example, a threat to livelihood due to a defendant's conduct could constitute an adverse action. *Fritz v. Charter Township of Comstock*, 592 F.3d 718 (6th Cir. 2010) (since our decision in Thaddeus-X…this is one of the first concerning a private individual.")

Other examples of adverse actions outside an employment context are defamation, (*Fritz, supra*), search, destruction, and theft of property (*Bell v. Johnson*, 308 F.3d 594, 603 (6rh Cir. 2002)), or the public disclosure of intimate or embarrassing information in violation of the plaintiff's right to privacy. *Bloch v. Ribar*, 156 F.3d 673, 681 (6th Cir. 1998). In each of these cases, the defendants took some action for which they had no privilege to take under the law,

unlike in the instant case, where each of the Defendants' actions were taken in accordance with the Munson Township zoning resolution. This case does not involve an adverse action.

Additionally, none of the Defendants' actions were taken because Plaintiffs attempted to exercise rights under the Rehabilitation Act. Since *Thaddeus-X*, the Sixth Circuit has applied a "but-for" standard to retaliation claims asserted under federal law. *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 400 (6th Cir. 2010). The same standard should be applied here, as the Rehabilitation Act prohibits intimidation or retaliation "<u>for the purpose of</u> interfering with any right secured by section 504." (emphasis added).

In this case, all Defendants merely applied the Munson Township Zoning Resolution to Plaintiffs' requests. There is no evidence that any of them purposely intended to interfere with any of their rights under the Rehabilitation Act. Moreover, even if Plaintiffs could show that the exercise of their rights under the Rehabilitation Act were linked to any of the Defendants' actions, Defendants would still prevail because they would have taken the same action in absence of protected activity; again, they were merely applying the zoning resolution as written. *Vereecke, supra.* The fact that the Board of Zoning Appeals previously refused to allow five unrelated adult members of the clergy to live in a single-family residence is evidence of such. *Wallender,* 2015 WL 10818741 *27 (lack of evidence that others similarly situated, who did not engage in protected activity, were not subjected to the same treatment leads to a finding that a defendant would have taken the same action absent the protected activity, and dismissal of retaliation claims). For this additional reason, Plaintiffs have no chance of success on the merits of this claim.

### C.     Plaintiffs will not suffer injury absent an injunction.

Plaintiffs will not suffer any irreparable injury absent a preliminary injunction. They claim that they are not required to show irreparable harm as such is presumed once there is a showing of

the likelihood of success on the merits, and also when a federal statute provides specifically for injunctive relief. Plaintiffs only cite case law from the Southern District of Ohio and non-binding circuit courts to support these contentions, however, the Sixth Circuit Court of Appeals has never adopted this line of reasoning. *US v. Edward Rose Sons*, 384 F.3d 258, 264 (6th Cir. 2004).

Instead, in *Edward Rose Sons*, the Sixth Circuit Court of Appeals made clear that deciding whether to grant a preliminary injunction requires a balancing of the factors. In *Edward Rose Sons*, the court found that the irreparable harm factor was immaterial to the disposition of the case because in that particular instance, the likelihood of success on the merits factor weighed very heavy, outbalancing any possible combination of the other three factors. As explained above, Plaintiffs do not have a likelihood of success on the merits, let alone a "strong" one; if the irreparable harm factor is not to be considered by this Court, this should be because the "strong success on the merits" factor greatly outweighs the other three in favor of Defendants. *See In re DeLorean Motor Co.*, *supra*.

Plaintiffs also claim that they face irreparable injury because, for a person who has lost housing, "it becomes difficult to disrupt new friendships and other community ties by uprooting oneself again," relying on *Chapp v. Bowman*, 750 F. Supp. 274, 277 (W.D. Mich. 1990). Plaintiffs' reliance on *Chapp* is misplaced.  First, no person will lose housing absent a preliminary injunction in this case; there currently reside two unrelated recovering adults and one property manager at the Residence, and Munson Township is not requiring any of those individuals to move. Second, this quote is nowhere to be found in *Chapp*.

The court in *Chapp* found that the plaintiffs could suffer irreparable injury absent an injunction on the sale of a property to another party because, once the property was purchased by another party, the plaintiffs could not make the specific property their own residence and could

never obtain the relief they sought. Should this Court deny Plaintiffs' Motion at this time, this will in no way foreclose Plaintiffs from obtaining the relief they seek should they eventually prevail on the merits. And, should this Court grant the Motion for Preliminary Injunction and allow three additional individuals to move into the Residence, should the merits be decided in Defendants' favor later, those individuals will be required to move and will be displaced.

Additionally, in *Harding v. City of Toledo*, 433 F.Supp.2d 867 (ND Oh. 2006) the plaintiffs moved to enjoin enforcement of a city zoning code requiring at least 500 feet between group homes. Despite the fact that enforcement of the ordinance would require disabled group home residents to move, the court still found that the irreparable harm factor weighed against the plaintiffs, considering the fact that the operator of the group home chose to ignore the city code and was primarily responsible for creating the problem that faced the residents. Moreover, the city still allowed the existence of group homes – it simply placed reasonable limits on them.

The facts in the instant case are similar to those in *Harding* in that the issue about which Plaintiffs complain – the fact that they are limited to two unrelated adults per single family residence – was created by LGRC's failure to determine which zoning code applied before purchasing the Residence. Moreover, Munson Township has not prohibited the existence of Level II Recovery homes completely, but it has placed a reasonable limit on how many unrelated adults may reside therein. As in *Harding*, "loss of housing" does not equate to irreparable harm here.

Furthermore, Plaintiffs have provided no evidence that those recovering from addiction cannot live in residential housing absent four other housemates recovering from addiction. This leaves only the monetary stress Plaintiffs allege to be experiencing as a result of an inability to house five recovering individuals. A claim based on monetary loss will not support a finding of irreparable harm and cannot serve as the basis for granting a preliminary injunction. *Nat'l Viatical*

*Inc. v. Universal Settlements Int'l*, 716 F.3d 952, 957 (6th Cir. 2013) ("a plaintiff's harm is not irreparable if it is fully compensable by money damages"). To the extent that limiting the number of recovering adults living in a single-family home to two as opposed to allowing five has caused financial stress, the existence of financial stress cannot satisfy the irreparable harm element. *Tri-Township Ambulance Serv. V. NE Mich. Med. Control Auth*, No. 08-14622-BC, 2007 WL 4793344 (ED Mich. Nov. 3, 2008).

Finally, should Plaintiffs claim that the loss of grant funds deprives those recovering of addiction of housing choices, it appears that LGRC cannot obtain these funds due to its own actions. Plaintiffs have not alleged that the grant parameters themselves required Plaintiffs to provide housing for five individuals recovering from addiction. Instead, based on the Complaint and Plaintiffs' Motion, LGRC will only receive the funds once the Ohio Department of Mental Health and Addiction Services determines that LGRC is in compliance with its grant application, in which LGRC indicated that it will operate a Level II Recovery House with five residents. It is of no fault of Defendants that LGRS indicated on its grant application that it would serve five residents without first ensuring it had the ability to do so within the parameters of applicable zoning resolution. LGRC's failure to research the property prior to its purchase and submit accurate information with its grant application should not now be rewarded with a preliminary injunction. *See Harding, supra*. Moreover, there is no evidence that LGRC must offer Level II Recovery housing to five individuals in the specific Residence, or within Munson Township at all.

The irreparable harm factor weighs against the issuance of a preliminary injunction in this matter. For this additional reason, Plaintiffs' Motion must be denied.

**D.**    **Issuance of a preliminary injunction would cause substantial harm to others and would harm the public interest.**

When the government opposes a preliminary injunction, the last two factors are merged. *Wilson v. Williams*, 961 F.3d 829 (6th Cir. 2020). Here, the public interest would not be served by the issuance of a preliminary injunction, and a preliminary injunction therefore would cause substantial harm to others.

Public interest is not served by circumventing the ordinances of a township when that ordinance has not been shown to be in violation of the township constituents' rights, and, as explained thoroughly above, the Munson Township zoning resolution does not violate Plaintiffs' rights. *Planet Aid v. Ypsilanti Tp.*, 26 F.Supp.3d 683,694 (ED Mich. 2014).

Additionally, the purpose of the zoning resolution is to ensure that appropriate utilities, sewage, treatment and water supply facilities, and other matters related to public health, safety, and general welfare are adequately addressed to serve such uses. (Exhibit A, Section 102). Allowing individuals or organizations to purchase property in Munson Township without regard for zoning regulations, and then allowing those individuals or organizations to violate those regulations, would not serve such uses as additional public resources must be allocated as a result. Public interest is best served by protecting a public entity's ability to lawfully control its zoning makeup, especially since residents properly expect that the public entity will enforce its own ordinances. *Harding,* 433 F.Supp.2d at 874; *Bazzy Investments v. City of Dearborn*, No. 16-10879, 2018 WL 10962765 (ED Mich. Aug. 2, 2018) ("the public also has a strong interest in local governments enforcing their own laws.")

Moreover, if Munson Township were to offer a variance to Plaintiffs in this case, the variance would be permanent and would run with the property, allowing subsequent property owners to continue to allow five unrelated adults to live in a single-family residence, no matter

what their purpose or disability status. Such is certainly not beneficial to the public. The final two preliminary injunction factors weigh in favor of Defendants.

## IV.    CONCLUSION

Based on the above, this Court must find that the preliminary injunction factors weigh in favor of Defendants, and deny Plaintiffs' Motion for Preliminary Injunction.

Respectfully submitted,

MAZANEC, RASKIN & RYDER CO., L.P.A.

*s/Amily A. Imbrogno*
DAVID M. SMITH (0079400)
AMILY A. IMBROGNO (0092434)
100 Franklin's Row
34305 Solon Road
Cleveland, OH 44139
(440) 248-7906
(440) 248-8861 – Fax
Email:   dsmith@mrrlaw.com
          aimbrogno@mrrlaw.com

*Counsel for Defendants Munson Township, Dennis Pilawa, Danielle Pitcock, Don Alexander, Joe Tomaric, Jim O'Neill and James Herringshaw*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on January 11, 2021, a copy of the foregoing Defendants' Brief in Opposition to Plaintiffs' Joint Motion for Preliminary Injunction was filed electronically. Notice of this filing will be sent to all registered parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

<u>*s/Amily A. Imbrogno*</u>
DAVID M. SMITH (0079400)
AMILY A. IMBROGNO (0092434)

*Counsel for Defendants Munson Township, Dennis Pilawa, Danielle Pitcock, Don Alexander, Joe Tomaric, Jim O'Neill and James Herringshaw*

PERS-200274/Ds BIO to Ps Jt Mtn for Preliminary Injunction with Incorporated Mem in Support