# Munson Township
# Board of Zoning Appeals
Minutes
September 19, 2002

The Board of Zoning Appeals meeting was called to order by Vice Chairman Bruce Ward at 6:36 p.m. Lucy Longo, Tim Kearns, Secretary Paula Friebertshauser and Court Reporter Jill Kulewsky were present. Bobbie Nolan and Alternate Lonny Beck were absent The Pledge of Allegiance was said.

Mr. Ward asked those people who hadn't signed in to do so. He indicated that the agenda was on the table. He explained that the Board of Zoning Appeals is a quasi-judicial Board, and anyone not in agreement with the decision of the Board could take the case to the Court of Common Pleas within 30 days after the minutes of the meeting are approved.

Dennis Pilawa arrived at 6:38. He advised those present that with only four members a tie vote is a no vote.

**CASE 02-20: Terry Malone**, 10501 Mulberry Rd., Chardon, OH-to construct a 20 x 36 ft. accessory building 20 ft. from the west property line in the front yard of residence. Violates SEC. 411 Minimum Dimensional Requirements R-3 District-minimum side yard is 25 ft. SEC. 509.2 Accessory Structures-no garage or other accessory structure shall be erected within the front yard of any district.

Don Zambory, Zoning Inspector, was sworn in. He read the variance request and violation and presented photographs of the prospective site. He presented four letters from various neighbors in connection with the case, and an elevation and floor plan. He indicated that the lot has considerable slope in the back (2/3 of the lot) according to the district-over-base map.

Terry Malone was sworn in. He explained the need for a new building as the previous one was in such a state of disrepair it collapsed on his wife. The purpose for the new building would be for storage of various lawn equipment and children's toys. It would go where the original building was because there is a ravine on one side, and heavy trees and a pond on the other. It would be intrusive if put directly in the front and too expensive to put anywhere else. Mr. Malone showed a model of timber construction. When asked the size of the original building, Mr. Malone responded 25' x 15' or 16'. He would be adding 16 more feet and 5 feet in width.

Mr. Pilawa stated for the record that 25 affected property owners were notified.

Gerry Pretzlaf of 10495 Mulberry Road, indicated that she is Mr. Malone's neighbor to the west and she is in support of the variance request. She would be able to see the building in the wintertime but feels there is enough footage between the properties.

Mr. Pilawa then read the letters from John Svoboda, Vincent Santell, Zev and Margaret Ashanburg, and John and Marlene Ashcraft in support of the variance.

Bruce Ward moved and Tim Kearns seconded that in Case 02-20 although there are two violations the variance be allowed. All members voted yes on the roll call (4-0). Motion carried.

The following facts were found relevant to the Board: the variance was not substantial; adjoining properties would suffer no detriment and are in fact in favor of the variance request; the delivery of government services would not be affected; and the spirit and intent behind the zoning would be maintained.

**CASE 02-21: Russell Lowe**, 12625 Mill View Ln., Chardon, OH-to keep an existing accessory building in the front yard of residence. Violates SEC. 509.2 Accessory Structures-no garage or other accessory structure shall be erected within the front yard of any district.

Mr. Zambory read the variance request and violation and presented photographs of the structure and site plan.

Russell Lowe was sworn in. He presented pictures and explained that there was an existing horse barn prior to the current building. He had it professionally torn down because it was a liability in that it was filled with hay and presented a fire hazard. Also kids were playing in there. Mr. Lowe indicated that the existing building is much smaller than the original barn. He uses it to store seasonal equipment. Mr. Lowe pointed out that he has an unusual shaped lot, and with the septic and woods there is no other place to put it. He was not aware that a variance was required.

Mr. Pilawa stated for the record that 10 affected property owners were notified.

Louise S. Berquist of 12759 Mill View Lane, made comment that Mr. Lowe has done a marvelous job on the house and grounds maintenance. The barn was dilapidated and a hazard. She indicated that anyone she has spoken with on the street have had no objections.

Tim Kearns moved and Bruce Ward seconded that the variance requested in Case 02-21 to keep an existing accessory building in the front yard of the residence be granted. The essential character of the neighborhood would be altered for the best; adjoining properties would suffer no detriment; the spirit and intent behind the zoning would be observed; and the delivery of government services would not be affected. All members voted yes on the roll call (4-0). Motion carried.

**CASE 02-22: Donna Jevnikar**, 10250 Cedar Rd., Chesterland, OH-to erect a 10 x 16 ft. accessory building 29 ft. from the road right-of-way in a flood prone district. Violates SEC. 411 Minimum Dimensional Requirements-minimum side yard corner lot secondary road residential district is 60 ft. from road right-of-way. SEC. 807.1 No structure will be built on the flood prone portion of a lot located in the flood prone district unless prior approval is obtained from the Board of Zoning Appeals.

Mr. Zambory read the variance request and violations and presented photographs of the proposed site location, and the district-over-base map (pointing out the flood prone area).

Donna Jevnikar was sworn in. She explained that because of lot lines, the septic, and being on a corner lot, anywhere they would put an accessory building would need a variance. They have lived there 10 years and have never had a problem with water. The proposed site location actually sits up higher. The building is to be used for storage of children's toys.

Mr. Pilawa stated for the record that 11 affected property owners were notified. There was no public comment.

Tim Kearns moved and Bruce Ward seconded that the variance requested in Case 02-22 to erect a 10 x 16-ft. accessory building 29 feet from the road right-of-way in a flood prone district, be granted. The essential character of the neighborhood would not be altered as the building would not be seen from the road; the owners do not have water problems; adjoining properties would suffer no detriment; the spirit and intent behind the zoning would be observed; and in regard to the use aspect there is nothing in the use area to dictate a negative response. All members voted yes on the roll call (4-0). Motion carried.

**CASE 02-23: Fr. Roger Bourgeois**, Congregation of Blessed Sacrament, 11487 Winterberry Ln., Chardon, OH-requests to be allowed 4 possibly 5 priests to reside at above address in an R-3 district. Violates SEC. 404.1a Permitted Principal Uses and Structures-one single-family dwelling in accordance with Article 5.

Don Zambory read the variance request and violation. He presented pictures of the home and a floor plan and pointed out the location of the five-acre site on the private road.

Father Bourgeois was sworn in. He explained that the Congregation of Blessed Sacrament is a community of priests at St. Pascal's on Wilson Mills Road. In that same building is the Provincial's headquarters. It is his desire to not live where he works. It is becoming more common to not want to live where they work. There would be four possibly five priests commuting to church for their work. It would simply be a residence.

When asked if it would be a transient situation, Father Bourgeois responded that it would not be constant, they take vows and have eight different parishes across the United States. He compared it to army personnel that can be transferred to a different base.

Mr. Pilawa stated for the record that 13 affected property owners were notified.

Marilyn Meier, Realty One agent, explained that the priests are also a family, not in the traditional way, but she didn't feel it would impact the use in any way.

When questioned by Peter Pesch, an affected property owner, Mr. Pilawa explained that the owner does not have to be the one to request a variance. If there is a purchase agreement between the purchaser and seller it gives the purchaser the right to request a variance. Mr. Pilawa explained that the variance is forever.

Dieter Sems of 11574 Winterberry Lane, was strongly opposed to the variance request. He did not feel that five priests living together qualify as family. They are employees and as part of their contract they are provided housing. He felt it almost approximates a boarding house. Secondly, Mr. Sems explained that there are seven conditions to be met. He could only see one that would be met and that would be safety. Mr. Dieter reviewed the factors to be considered. He felt that there are numerous homes available so the hardship is not unique. He was concerned that if the priests chose to sell the property the new owner could do anything as a multi-family. Mr. Sems added that most of the affected property owners have lived on the street for 25 years and are concerned with the significant impact on property value. It has been a single family home and should remain one.

Father Bourgeois asked if it was possible to restrict the variance for as long as they have the house and then revert it back. Mr. Pilawa commented that he was not aware of any way to restrict, not under conditional use.

Mr. Pesch commented that he would like to second everything Mr. Sems said, and added that the request is clearly inconsistent with the spirit and intent behind the zoning.

Gregory Schmidt, resident immediately to the south, was thrilled the priests are making the offer. Based on knowing them, he talked to them to make sure it is what it is. They have their vocations and want a place to live like everyone else. As far as property values, he expected their ownership would be maintained. He added that the property has sat for so long, and with the offer made to Joe (property owner) they (surrounding property owners) have already made their equity. He felt the offer was substantial enough that they would do well to have the order buy the property.

When asked if the variance were granted if it would obligate the Board to grant the same use to surrounding property, Mr. Pilawa explained that every case rises and falls on its own facts or circumstances. It could be argued in the future, but the Board has always taken the position that each case is heard on its own merit.

Mr. and Mrs. Vittel also opposed the variance request based on the same reasons given by Mr. Sems. Mrs. Vittel wondered if they would be exempt from real estate taxes. Ms. Meier, real estate agent, thought not to her knowledge, and Mr. Zambory added that the Sisters of Notre Dame are the biggest taxpayers.

George Collins of 10461 Wye Road, commented that the familiar aspect of the priests is irrelevant. The variance would make it a multi-family use.

Janice Sulak, Winterberry resident, completely supported Mr. Sems comments. She thought that the priest in question is not going to be there forever and his replacement may choose not to live there. An institution would own it and could use it as they wish. She wants it to remain single family.

Joseph Luongo of 11522 Winterberry, stated that he has nothing against the priests or Joe, who is a pillar on the street, but they do have a grievance against the variance.

Maria Wolanin, Smythe Cramer listing agent, thought about the properties around John Carroll University – she wondered why people were afraid of having priests around them. Mr. Pilawa commented that he didn't think the residents have a fear of living next to priests, but a fear of who they would be living next to in the future.

Marjorie MacNeal, of 11455 Winterberry Lane, said her family feels strongly with those thoughts offered by Mr. Sems and Mr. Pesch. She offered that if two priests were buying it would be no problem, but an institution can sell to another institution. They bought their land to be a single-family residence. Diane Cherne of 11535 Winterberry Lane, stated she was all for the zoning as stated.

Bruce Ward moved and Tim Kearns seconded that the variance requested in Case 02-23 supplemented by the comments of the public and the resolution of zoning, be denied. Ms. Longo emphasized that a yes vote would be a denial. Mr. Pilawa listed the standards that apply for approval for use – the variance stems from conditions unique to property; the hardship condition is not created by actions of the applicant; the granting of the variance will not adversely affect the rights of adjacent owners; will not adversely affect the public health, safety or general welfare; the variance will be consistent with the spirit and intent behind zoning; the minimum is sought which will afford relief to the applicant; and the property could be used in an economically viable manner without a variance. Mr. Pilawa urged the Board to deny the request because all of these factors were not met. The Board also considered the affect on adjacent property owners; that there are other viable uses; causing it to be a multihouse will not be in the spirit of zoning; and the condition is not unique to property as evidence provided. All members voted yes on the roll call (4-0). Motion carried.

Father Bourgeois commented that about a month ago when they decided to do this they looked at 15 homes and didn't know it would cause such a ruckus, however, he could understand the position of the people upon knowing the laws.

The hearing was adjourned at 8:05 p.m.

Lucy Longo moved and Bruce Ward seconded to approve the findings of fact for Cases 16, 17, and 18. Motion carried.

Bruce Ward moved and Lucy Longo seconded to approve the minutes of August 15, 2002 as written. Motion carried.

_____          _____
Dennis Pilawa, Chairman                          Paula Friebertshauser, Secretary